The **HOSPITAL COUNCIL OF WESTERN PENNSYLVANIA,** Appellant,

v.

**CITY OF PITTSBURGH, County of Allegheny, City of Erie and City of Johnstown, Appellees.**

No. 91-3035.

United States Court of Appeals, Third Circuit.

Argued June 13, 1991.

Decided Nov. 15, 1991.

---

Seymour J. Schafer, Markel, Schafer and Means, PC, Pittsburgh, Pa., David L. McClenahan (argued), David R. Cohen, Kirkpatrick & Lockhart, Pittsburgh, Pa., for appellant, The Hosp. Council of Western Pennsylvania.

Howard J. Schulberg (argued), Asst. City Sol., Mary K. Conturo, City Sol., for appellee, City of Pittsburgh.

James J. Dodaro, County Sol., Ira Weiss, Deputy County Sol., George M. Janocsko (argued), Caroline Liebenguth, Asst. County Solicitors, Allegheny County Law Dept., Pittsburgh, Pa., for appellee, County of Allegheny.

Gerald J. Villella (argued), City Sol., Erie, Pa., for appellee, City of Erie.

Samuel F. Rizzo, Johnstown, Pa., for appellee, City of Johnstown.

Before BECKER and ALITO, Circuit Judges and HUYETT, District Judge.

## OPINION OF THE COURT

ALITO, Circuit Judge:

The Hospital Council of Western Pennsylvania appeals from an order dismissing its complaint on two alternative grounds: lack of associational standing and abstention under *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). We will reverse.

## I.

The Council filed a complaint in the United States District Court for the Western District of Pennsylvania asserting federal constitutional claims and pendent state claims against the City of Pittsburgh, the County of Allegheny, the City of Erie, and the City of Johnstown. The complaint alleged that the Council is "a Pennsylvania nonprofit corporation which functions as a membership organization that represents, assists and speaks for its members in matters where joint action is appropriate." The complaint stated that the Council has ninety-four members, including all of the private nonprofit hospitals within the governmental units named as defendants.

The heart of the complaint was the allegation that the defendant governmental units had attempted and were attempting to "coerce" or "force" tax-exempt member hospitals to make payments in lieu of taxes by "indicat[ing] that those [hospitals] which [did] not agree to such payments and/or agreements 'in lieu of taxes' [would] have their tax exempt status challenged, [would] be likely to run into difficulties in obtaining zoning approvals, and [would] not be offered the opportunity to provide services to the taxing authority." The complaint alleged that members had been harmed and were immediately threatened with harm as a result of the defendants' actions. The complaint also specified agreements reached between the defendants and various hospitals within their jurisdictions.

Count One of the complaint asserted that the defendants had violated the Council members' right to equal protection by discriminating against those who refused to make payments in lieu of taxes. Count Two alleged that members were being deprived of property without due process. Count Three repeated essentially the same constitutional claims as Counts One and Two. Finally, Count Four asserted pendent claims under the Uniformity Clause of the Pennsylvania Constitution, art. 8, sec. 1, and other state laws. The complaint sought declaratory and injunctive relief,

but it did not request damages for any past violations.

On motion by the defendants, the district court dismissed the complaint. The court held that the Council did not meet two of the three requirements for associational standing set out in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). First, the court found that "there is no injury, real or threatened, which is fairly traceable to defendants' allegedly unlawful conduct." The court wrote that none of the members had lost its tax exemption, that any payments made in lieu of taxes were purely voluntary, and that any alleged threat was "purely hypothetical and conjectural." The court also concluded that the Council lacked associational standing because "the claims asserted and the relief requested ... would require the participation of the individual hospitals in this lawsuit."

As an alternative ground for dismissal, the court held that abstention was required under *Middlesex County Ethics Committee.* The court noted that the defendants had challenged the tax exemptions of several member hospitals in state administrative proceedings and that "any constitutional challenges to defendants' taxing practices implicate important state interests." The Council appealed.

## II.

■ "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441. "[W]hen standing is challenged on the basis of the pleadings," as it was here, we must " 'accept as true all material allegations of the com-

plaint and ... construe the complaint in favor of the complaining party.' " *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988), quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Under these standards, the complaint in this case should not have been dismissed for lack of standing.[1]

### A. *Standing of individual members.*

■ The district court held—and the County of Allegheny and the City of Pittsburgh argue on appeal—that members of the Council lacked standing because they did not suffer injury in fact. The meaning of injury in fact was set out in *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (footnote omitted):

> [Injury in fact] must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is "distinct and palpable." *Warth, supra,* 422 U.S. at 501, 95 S.Ct. at 2206, as opposed to merely "[a]bstract," *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), and the alleged harm must be actual or imminent, not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983). Further, the litigant must satisfy the "causation" and "redressability" prongs of the Art. III minima by showing that the injury "fairly can be traced to the challenged action," and "is likely to be redressed by a favorable decision." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925–26, 48 L.Ed.2d 450 (1976); [*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982) ]. The litigant must clearly and specifically set forth facts sufficient

---

1. Our review of the district court's decision on standing is plenary. *Roe v. Operation Rescue,*

919 F.2d 857, 863 (3d Cir.1990).

to satisfy these Art. III standing requirements.

The complaint in this case met these requirements. First, the complaint alleged injury that is "concrete in both a qualitative and temporal sense." The complaint alleged a classic form of qualitatively concrete injury—direct financial harm. The complaint alleged that members had been subjected to and were threatened with discrimination in the initiation of tax exemption challenges, the handling of zoning matters, and the awarding of public contracts.[2] It is obvious that discrimination of this type is likely to cause direct financial harm to the victims.

The complaint also alleged harm that was temporally concrete, *i.e.*, that member hospitals were immediately in danger of sustaining injury. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990). The complaint alleged that "it ha[d] been indicated that [member hospitals not agreeing to make payments in lieu of taxes] will have their exempt status challenged, will be likely to run into difficulties obtaining zoning approvals, and will not be offered the opportunity to provide services to the taxing authority" (App. at 8a). The complaint further alleged that member hospitals "have either been subject to, or are being *immediately threatened* with challenges of their tax exempt status or are either being treated unfavorably with regard to zoning matters or are *under the shadow or threat* of such unfavorable treatment" (App. at 11a (emphasis added)).

These allegations are far more concrete than those found to be "hypothetical" or "conjectural" in cases such as *City of Los Angeles v. Lyons, supra,* and *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). In *Lyons,* a man who was allegedly subjected to a chokehold by the police during a past arrest sought an injunction against continued use of the chokehold except under extreme circumstances. The Court held (461 U.S. at 101–10, 103 S.Ct. at 1664–70) that this individual lacked standing to seek injunctive relief because it was speculative that he would again be arrested and subjected to a chokehold. Similarly, in *O'Shea,* the Court held that residents of a town lacked standing to seek injunctive relief against a magistrate and judge whom they claimed were engaged in a pattern and practice of illegal conduct in criminal cases. The Court held (414 U.S. at 493–99, 94 S.Ct. at 674–78) that it was speculative and conjectural that any of the plaintiffs would be charged with criminal conduct and subjected to the illegal conduct alleged. *See also, e.g., Whitmore,* 110 S.Ct. at 1724–25; *Diamond v. Charles,* 476 U.S. 54, 66, 106 S.Ct. 1697, 1705–06, 90 L.Ed.2d 48 (1986); *Ashcroft v. Mattis,* 431 U.S. 171, 172 n. 2, 97 S.Ct. 1739, 1740 n. 2, 52 L.Ed.2d 219 (1977); *Golden v. Zwickler,* 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). In this case, by contrast, the complaint unequivocally alleges that member hospitals have been threatened with imminent harm. We do not think these allegations may be termed "hypothetical" or "conjectural."

 We also believe that the complaint meets the "causation" requirement. This requirement means that the injury for which redress is sought must be traceable to the challenged actions of the defendants, not to "injury that results from the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976). Here, it seems clear that the alleged injuries for which the Council seeks redress—the various forms of discrimination noted above—are directly traceable to the defendants. Both the County of Allegheny and the City of Pittsburgh argue that their

---

**2.** In its brief on appeal (at 12), the City of Erie states:

> [A] dubiously tax exempt hospital ... should not expect a warm welcome when it requests a legislative favor of rezoning or any other favorable treatment in the zoning areas.
>
> Nor should such hospitals expect to find local officials eager to contract with them.

Appellees have the right to utilize certain types of leverage to convince institutions with dubious tax exemptions to compromise or capitulate. Of course, there is a limit to the types of pressure which can legitimately be brought to bear.

actions in challenging the tax-exempt status of property cannot cause harm because they can only seek but cannot alone effect the revocation of tax exemptions. This argument overlooks the risk and litigation expense that may be caused by retaliatory challenges, even if ultimately unsuccessful. Moreover, this argument completely ignores the allegations in the complaint regarding discriminatory treatment in zoning matters[3] and in the awarding of public contracts.

The complaint likewise satisfies the "redressability" requirement. Should the plaintiffs prevail, the district court could enjoin the discriminatory practices about which they complain. The County and the City of Pittsburgh argue that the "redressability" requirement cannot be met because legitimate challenges to tax-exempt status cannot and should not be enjoined. While this is true, retaliatory challenges may be enjoined, as may discrimination in zoning and contracting.

We also conclude that the facts needed to establish standing are set out with sufficient specificity. The County points out that the complaint "does not indicate what services, if any, [Council] members sought to provide to Allegheny County, when they sought to provide such services, whether such services were competitively bid or the response by the County to an expression of interest in providing such services." The County has not cited any authority indicating that this level of specificity is necessary to avoid dismissal of a complaint for lack of standing, and we believe that the County has exaggerated the meaning of this requirement. *See Pennell*, 485 U.S. at 1, 7–8, 108 S.Ct. at 855–56. At the present stage, in our view, the clear allegations of past and threatened discrimination are sufficient. Thus, the complaint adequately alleges that members of the association suffered injury in fact.

B. *Germaneness.*

The complaint sought to protect interests that are germane to the purposes of the Association. The complaint alleged that the Council "functions as a membership organization that represents, assists and speaks for its members in matters where joint action is appropriate or is designed to resolve common problems." Clearly the interests that the Council seeks to protect here—the financial interests of members—are germane to the organization's broad purposes.

Although the district court did not rely on this prong of the associational standing test, the County and the City of Pittsburgh contend that this prong is not satisfied. They argue that the complaint's description of the purposes of the Council is so broad that it is essentially meaningless, but they cite no authority indicating that an association cannot satisfy the "germaneness" requirement unless its purpose is narrow or specific. We have likewise found no such controlling authority. On the contrary, in *Pennell*, 485 U.S. at 7 n. 3, 108 S.Ct. at 855 n. 3, the Supreme Court held that the germaneness requirement was met because the association was " 'organized for the purpose of representing the interests of the owners and lessors of real property in San Jose in this lawsuit.' " We see no relevant basis for distinguishing the stated purpose of the Council here from that of the association in *Pennell*.

The County also suggests that the interests that the Council seeks to promote are adverse to those of some of its members, since some members may wish to benefit from the favorable treatment allegedly given to institutions entering into agreements to make payments in lieu of taxes. We recently addressed a similar question in *Contractors Association v. City of Philadelphia*, 945 F.2d 1260 (3d Cir.1991). In that case, an association of contractors filed suit claiming that the Equal Protection Clause was violated by a local ordinance that set goals regarding the percentage of city contracts awarded to minority-owned businesses. We held that

---

**3.** The County points out that it lacks zoning authority, but it does not deny that it awards potentially valuable contracts.

the association had standing to assert this claim even though some of its members were minority-owned businesses and therefore had interests adverse to those advanced by the association in its complaint. We wrote (at 1266):

> The [association's] position in this litigation is not contrary to the interests of a majority of [its] members, and there is nothing on this record indicating that [it] failed to follow [its] own internal rules before joining this litigation.

By the same reasoning, we cannot hold that associational standing is lacking in the present case because of a conflict between the interests of Council members who have entered into agreements to make payments in lieu of taxes and those who have not. Moreover, we have no basis at this juncture for concluding that those Council members who have entered into such agreements do not feel that the relief sought in this case would be beneficial. While it is certainly possible that such member hospitals may prefer to continue making payments in exchange for favorable treatment by the defendant jurisdictions, it is also possible that they may prefer to stop making the payments even if that also means relinquishing the favorable treatment.

C. *Participation by individual members.*

The district court held—and the County and the City of Pittsburgh argue on appeal—that associational standing is improper because "the claims asserted and the relief requested require the participation of the individual hospitals in this lawsuit." We disagree.

■ It is clear that the Council's request for declaratory and injunctive relief case does not require participation by individual members. The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members. *Pennell*, 485 U.S. at 7 n. 3, 108 S.Ct. at 855 n. 3; *UAW v. Brock*, 477 U.S. 274, 287–88, 106 S.Ct. 2523, 2531–32, 91 L.Ed.2d 228 (1986). The Court has distinguished such requests from requests for individualized damages for association members. *Warth*, 422 U.S. at 515–16, 95 S.Ct. at 2213–14. Neither the district court nor the defendants have explained why the declaratory and injunctive relief sought by the Council in this case would have required participation by individual Council members. Consequently, we hold that relief sought by the Council does not preclude associational standing here.

■ Nor do we believe that associational standing is foreclosed by the nature of the claims asserted in this case. In the third prong of the test first set out in *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441, the Supreme Court stated that associational standing is inappropriate if the claim or request for relief requires "the participation of individual members in the lawsuit." Viewed alone, this language could be interpreted to mean that associational standing is not permitted if participation by any members of the association would be necessary. This language, however, appears to paraphrase a more detailed statement first made by the Court in *Warth* and repeated in later cases. In *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211–12 (emphasis added), the Court wrote:

> [S]o long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party indispensable* to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction.

The Court quoted and relied upon this statement in *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441, and *Brock*, 477 U.S. at 282, 106 S.Ct. at 2528–29. Accordingly, it appears that an association may assert a claim that requires participation by *some* members.

Here, the claims asserted by the Council would require some participation by some Council members. This case, unlike many prior associational standing cases, does not involve a challenge to a statute, regulation, or ordinance, but instead involves a challenge to alleged practices that would probably have to be proven by evidence regard-

ing the manner in which the defendants treated individual member hospitals. Adjudication of such claims would likely require that member hospitals provide discovery, and trial testimony by officers and employees of member hospitals might be needed as well. Nevertheless, since participation by "each [allegedly] injured party" would not be necessary, we see no ground for denying associational standing.

### III.

▆ As an alternative ground for dismissal, the district court held that abstention was required under *Middlesex County Ethics Committee v. Garden State Bar Association, supra,* a decision that grew out of a line of abstention cases including *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under the abstention doctrine developed in these cases, abstention is proper "only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989). In this case, it is apparent that the third requirement is not met,[4] and thus we need not consider the other requirements.

▆ The district court stated that "any constitutional challenges to defendants' administration of its taxing system" could be fully raised in proceedings before the state boards of assessment."[5] But even assuming that any member hospital whose tax exemption is challenged by a defendant in proceedings before a board of assessment would have an adequate opportunity in those proceedings to raise the claim that the challenge was retaliatory or discrimina-

tory, it seems clear that other key federal claims asserted by the Council in this case could not be raised in those proceedings. As previously noted, the complaint also asserts claims concerning discrimination in zoning matters and in the awarding of public contracts, but neither the district court nor the defendants have explained how the state boards of assessments could entertain such claims. Thus abstention was not proper in this case.

We will vacate the order of the district court dismissing the complaint, and we will remand for further proceedings. Although the defendants have urged us to affirm the district court's decision on the ground that the complaint fails to state any claim on which relief may be granted, we decline to reach this question, which the district court has not yet addressed. Nothing in our opinion should be interpreted to express any view on this question or on the truth of the Council's allegations.

---

**4.** We review the district court's decision to abstain for abuse of discretion. *Schall v. Joyce,* 885 F.2d at 106.

**5.** Under Pennsylvania statute, taxpayers may appeal a local tax assessment to the appropriate local assessment board. 72 Pa.Cons.Stat.Ann. § 5020–511 (1991). *See also* § 5341.14 (appeal to Board of Revision of Taxes in Counties of the First Class), § 5452.10 (appeal to Board of Property Assessment, Appeals, and Review in Counties of the Second Class), § 5349 (appeal to

Board of Assessment and Revision in Counties of the Third Class), §§ 5453.701, 5453.702 (appeal to Board of Assessment and Revision of Taxes in Counties of the Fourth through Eighth Classes). Thereafter, the taxpayer may appeal from the decision of the appropriate board to state court. 72 Pa.Cons.Stat.Ann. § 5020–518.1 (1991). *See, e.g., Filbern Manor Apartments v. Board of Assessment Appeals,* 138 Pa.Cmwlth. 660, 589 A.2d 279 (1991).