PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2961
_____

NEW JERSEY COALITION OF AUTOMOTIVE
RETAILERS, INC.,
                                        Appellant

v.

MAZDA MOTOR OF AMERICA, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-18-cv-14563)
District Judge:  Honorable Brian R. Martinotti
_____

Argued March 24, 2020

BEFORE: JORDAN, RESTREPO and GREENBERG,
<u>Circuit</u> <u>Judges</u>.

(Opinion Filed: April 28, 2020)
_____

Daniel J. Kluska      (Argued)
Peter L. Schenke
Wilenz Goldman & Spitzer
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, N.J. 07095
        *Counsel for Appellant*

Donald B. Verrilli, Jr.
Adele El-Khouri      (Argued)
Munger Tolles & Olson
1155 F Street, N.W., 7th Floor
Washington, DC 20004
        *Counsel for Amicus-Curiae National Automobile*
        *Dealers Association*

Jessica L. Ellsworth (Argued)
Matthew J. Higgins
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004
        *Counsel for Appellee*

_____

OPINION

_____


GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.      INTRODUCTION

This matter comes on before this Court on the appeal of Plaintiff-Appellant New Jersey Coalition of Automotive Retailers ("the Coalition"), seeking review of the District Court's dismissal of its case under the New Jersey Franchise Practices Act ("NJFPA") against Defendant-Appellee Mazda Motor of America for lack of standing in an order entered on July 30, 2019.  For the reasons stated below, we find that the District Court construed the complaint too narrowly in concluding that the Coalition lacked association standing, so we will reverse the Court's order of July 30, 2019, and remand the case to the District Court for further proceedings.

## II.      BACKGROUND

For the purposes of this opinion, we construe all facts alleged in the complaint as true, and in the light most favorable to the Coalition.  See N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 371 (3d Cir. 2015).  The Coalition is a trade association whose members consist of franchised new car dealerships in New Jersey, among whom sixteen members are Mazda dealers.  According to the complaint, Mazda initiated an incentive program for its franchised dealers called the Mazda Brand Experience Program 2.0 ("MBEP"), which provides incentives, in the form of per-vehicle discounts or rebates on the dealers' purchases of vehicles from Mazda, to dealers who make certain capital investments in their physical facilities that highlight their sale of Mazda vehicles, or in some instances, dedicate their dealerships exclusively to the sale of Mazda vehicles.

3

The incentives come in different tiers, with the highest tier available to dealers who have exclusive Mazda facilities and a dedicated, exclusive Mazda general manager. Mazda gives lower incentives to dealers who do not employ an exclusive Mazda general manager and/or dealers whose dedicated facilities do not conform to all appearance requirements as defined by Mazda. But Mazda dealers also earn incentives if they meet customer experience metrics. Mazda dealers who do not have a dedicated facility, i.e., those dealers who sell other brands of vehicles as well as Mazdas, so-called "dual" dealers, do not receive any incentives for brand commitment.

Although the complaint did not set forth these allegations, the District Court also relied on certain facts contained in declarations the parties made in support and in opposition to the motion to dismiss. According to the Court, at the time of the filing of the complaint only three of the sixteen Mazda dealers in the Coalition qualified for the highest tier of incentives that we describe above, although eight others qualified for some tier of incentives. N.J. Coal. of Auto. Retailers v. Mazda Motor of Am., No. 18-14563, 2019 WL 3423572, at *7 (D.N.J. July 30, 2019) ("NJCOA"). The complaint alleges that the MBEP creates unfair competitive advantages for dealers who qualify for incentives under the MBEP at the expense of those dealers who do not, and even among incentivized dealers through different tiers of incentives, in violation of the NJFPA. The Coalition seeks to enjoin the implementation of the MBEP and to obtain declaratory relief.

III.    DISCUSSION

4

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's dismissal based on lack of standing de novo. Aetna, 801 F.3d at 371.

In dismissing the case, the District Court relied on the three-prong test that the Supreme Court set forth in Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441 (1977), to find that the Coalition lacked association standing to bring its lawsuit on behalf of its members. See NJCOA, 2019 WL 3423572, at *3-8. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343, 97 S.Ct. at 2441. The Court held that the Coalition's complaint satisfied the first prong but failed the second prong of the Hunt criteria, thus the Court did not reach the third prong. NJCOA, 2019 WL 3423572, at *5-8.

With regard to the first prong, the District Court held, and we agree, that it is obvious on the face of the complaint at least some of the Mazda dealers in the Coalition suffer competitive harm due to implementation of the MBEP—the program itself expressly discriminates among Mazda dealers. See Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211-12 (1975); (noting that an association "must allege that its members, or any one of them," are harmed); Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 87 (3d Cir. 1991). When addressing the second prong, the Court held that because eleven of the sixteen Mazda dealers would lose the incentives

5

they currently enjoy under the MBEP, the Coalition's lawsuit, which seeks to enjoin implementation of the MBEP, is in conflict with the interests of those dealers, who make up the majority of the Mazda dealers that the Coalition represents. See NJCOA, 2019 WL 3423572, at *6. Under the Court's rationale, given that only five out of the sixteen Mazda dealers would benefit from the lawsuit, the Coalition cannot possibly be protecting the interests of its members. See Contractors Ass'n of E. Pennsylvania, Inc. v. City of Philadelphia, 945 F.2d 1260, 1266 (3d Cir. 1991) (stating that an association does not have standing to bring a lawsuit that is "contrary to the interests of a majority of [its] members").

We disagree. The District Court impermissibly limited the Coalition's lawsuit to a single theory of harm, one that arguably the complaint does not even raise. Essentially, in the Court's view, this case is about the haves versus the have nots. Because some of the Mazda dealers have been shut out of the MBEP altogether, this lawsuit is about vindicating their rights and bringing competitive balance back between them and the other dealers who do benefit from the MBEP. Though we understand why the Court viewed the complaint as it did, we are satisfied that its reading was too narrow. "[W]hen standing is challenged on the basis of the pleadings . . . we must . . . construe the complaint in favor of the complaining party." Hosp. Council, 949 F.2d at 86 (internal quotation marks and citation omitted).[1]

---

[1] We point out that the information on which the District Court relied in dismissing the complaint regarding the three dealers in the highest tier and the eleven MBEP participants, came directly from Mazda in a declaration by one of its own regional managers. See App. 52.

According to the District Court, only three of the Mazda dealers enjoy the highest tier of incentives. We see no reason to dismiss the possibility that the eight dealers who enjoy lower tiers of incentives would forego such incentives in order to prevent the creation of three "super" dealers who clearly have a competitive advantage over all other Mazda dealers. In fact, the very declarations on which the Court relied in granting the motion to dismiss suggest this view of the complaint. Indeed, one of the Mazda dealers declared that it qualifies for a lower tier of incentives under the MBEP, but nevertheless supports the lawsuit. See App. 89.

We think it is also plausible that many of the Mazda dealers regard the capital investment required to participate fully in the MBEP as financially unjustified, but nevertheless feel pressured to participate due to the competitive disadvantages artificially created by the MBEP for non-participation or partial participation. See compl. ¶ 16 (App. 32). As Mazda points out in its brief, one of the dealers supporting the lawsuit had done just that after the District Court dismissed the case. Appellee's Br. 8 n.1. Although Mazda highlights five dealers who had submitted declarations in opposition to this lawsuit, five does not constitute a majority of the sixteen Mazda dealers. Construing the complaint most favorably to the Coalition, we see little support for the Court's conclusion that the Coalition is acting in conflict to the interests of its members. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965 (2007) ("Asking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage . . . . [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citation and internal quotation marks omitted).

At oral argument before us, Mazda argued that the conflict of interest issue is a factual dispute, and the District Court made its ruling because the Coalition did not rebut Mazda's evidence that eleven of the sixteen Mazda dealers enjoy some form of benefit from the MBEP. That argument turns the analysis at the pleading stage on its head. We construe the complaint in the light most favorable to the Coalition, and it is Mazda's burden to present facts to attack the basis of jurisdiction pled in the complaint, which Mazda failed to do. See Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016) ("Rule 12(b)(1) allows a defendant to attack the allegations in the complaint and submit contrary evidence in its effort to show that the court lacks jurisdiction."). Instead, it submitted affidavits from only five dealers clearly showing opposition to the lawsuit, while asking the District Court to infer, from those affidavits, that six other dealers would have opposed the lawsuit as well, which the District Court unfortunately did. That is not construing the complaint in the light most favorable to the complainant.[2]

---

[2] In analyzing the conflict of interest issue, the District Court held that "in calculating the total membership of NJ CAR for the purpose of determining whether the litigation runs contrary to the interests of the majority, it will consider the total relevant membership to include only Mazda dealer members. Accordingly, NJ CAR members that do not sell Mazda vehicles are not included in the calculation." NJCOA, 2019 WL 3423572, at *7 n.7. We question the validity of that holding. After all, even if fifteen out of the sixteen Mazda dealers might oppose a lawsuit of this kind due to the significant investment they have already made as MBEP participants, there can be no question that the last remaining Mazda dealer holding out would

In view of our analysis, we will reverse the Court's July 30, 2019 order dismissing the case, and remand the case to that Court for further proceedings.[3]

---

have standing to bring a lawsuit against Mazda on its own, and the success of that lawsuit would harm the other fifteen dealers regardless of their opposition. The germaneness prong of the Hunt test, therefore, is primarily concerned with the association's ability to zealously advocate the claims of that one dealer. 432 U.S. at 343, 97 S.Ct. at 2441 ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on . . . [whether] the remedy, if granted, will inure to the benefit of those members of the association actually injured." (quoting Warth, 422 U.S. at 515, 95 S.Ct. at 2213)). If the other non-Mazda members, numbered in the hundreds, have an exceedingly strong interest in the success of such a lawsuit because, for example, they wish to prevent other manufacturers from implementing similar coercive programs against them, there should be little concern over the Coalition's capacity to be a zealous advocate of that one member's claims, even if the non-Mazda members may not have standing to bring a lawsuit on their own. In that scenario, the opposition of the fifteen Mazda dealers would be immaterial, as they would constitute a tiny minority of the membership. However, we need not squarely address the District Court's holding here, as it erred even if we accept its holding as correct.

[3] We stress that in so ruling, we express no opinion as to the merits of this case. We limit our holding to the conclusion that the Coalition has association standing to bring this case. In fact, our opinion should not be understood as implying that the

complaint sufficiently has stated a valid claim under the NJFPA. On remand, the District Court is free to consider any other arguments for dismissal that Mazda advances.