TELECOMMUNICATIONS RESEARCH & ACTION CENTER on Behalf of R. CHECKNOFF, M. Vogel and other Members, Appellant,

James D. Wareham

v.

ALLNET COMMUNICATION SERVICES, INC.

No. 86–5071.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1986.

Decided Dec. 5, 1986.

Samuel A. Simon, Washington, D.C., for appellants.

Millard Frederick Ottman, Jr., with whom Mollie A. Murphy, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, RUTH BADER GINSBURG and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

Concurring opinion filed by Circuit Judge BORK.

RUTH BADER GINSBURG, Circuit Judge:

This case requires us to address the standing of an association to pursue an action for damages on behalf of its members. Plaintiff-appellant Telecommunications Research and Action Center (TRAC), a not-for-profit membership organization concerned with promoting fair, reasonable, and nondiscriminatory rates for communications services, sued Allnet Communications, Inc. (Allnet) for maintaining an allegedly unlawful dual rate structure for several months in 1984. Specifically, TRAC stated that from June 1, 1984 until December 31, 1984, Allnet had charged customers different rates for the same service depending upon when the customer first subscribed to the service, and without allowing subscribers to choose between the two rate structures.[1] TRAC also complained that Allnet

---

1. Allnet's rates, TRAC alleged, violated sections 201(b) and 202(a) of the Communications Act of

had changed its rates without public notice and without amending its filed tariff.[2] TRAC sought an award of damages against Allnet on behalf of TRAC's allegedly overcharged members. The organization had approximately 12,000 individual members nationwide when it commenced this action. Counsel had the names of only five or six TRAC members who subscribed to Allnet during the relevant time period.

The district court granted Allnet's motion to dismiss and held: (1) under the circumstances here, TRAC lacks standing to claim damages on behalf of its members; (2) the Federal Communications Commission (FCC), under the doctrine of primary jurisdiction, is the proper forum of first resort on the question whether Allnet impermissibly provided "like" or the "same" service at different rates.[3] We affirm the district court's judgment dismissing the complaint. We pretermit the novel question whether a case of this nature can be installed directly in court with no prior stop at the FCC.[4] We rest our decision on the ground that TRAC's damage claim was properly dismissed for want of standing.

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct.

2197, 2211, 45 L.Ed.2d 343 (1975). The Supreme Court stated in a pathmarking decision, *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), that an association has standing to bring suit on behalf of its members when three conditions are met:

(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests [the association] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*See also International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Brock,* — U.S. —, —, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (reaffirming *Hunt* three-part test).

The first two *Hunt* conditions are satisfied in this case. The five or six TRAC members so far identified as Allnet subscribers in the relevant period would have standing to contest the alleged overcharges. TRAC, as an organization, is dedicated to the promotion of fair and nondiscriminatory rates for telephone and other communications services, and TRAC assails the Allnet rate differentials as unfair and dis-

1934, 47 U.S.C. §§ 201(b), 202(a) (1982). The former section declares unlawful any "unjust or unreasonable" charge. The latter proscribes "unjust or unreasonable discrimination in charges."

2. Section 203(b)(1) of the Communications Act, 47 U.S.C. § 203(b)(1), states that no change shall be made in filed charges until the Commission and the public have been given the required notice.

3. James D. Wareham, an Allnet subscriber in the June 1–December 31, 1984 period, joined TRAC as a plaintiff in the district court. Wareham was not a TRAC member. While Wareham's standing was never in dispute, his claim, along with the claims TRAC sought to pursue on behalf of its members, met dismissal in the district court on the ground that primary jurisdiction in this matter of rates resides in the FCC. Wareham did not pursue an appeal.

4. TRAC relied on section 207 of the Communications Act, 47 U.S.C. § 207, which provides:
Recovery of damages

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies. TRAC stated at oral argument that it chose not to go to the Commission because the FCC has "virtually abdicated any sort of resolution of these kinds of discrimination cases". *See also* Brief of Appellant at 12 (FCC has "gone out of the business of litigating common carrier complaint cases"). TRAC acknowledged, however, that the FCC, if it did rule on the case, could order redress for all adversely affected subscribers, not just the five or six TRAC members whom the organization purported to represent in court.

criminatory. TRAC's standing therefore turns on satisfaction of the third *Hunt* condition. We hold that the money damages claims TRAC seeks to advance are the kind that ordinarily require individual participation, so that TRAC may not proceed in the format it has selected.

While the Supreme Court has not yet confronted and decided the issue, lower federal courts have consistently rejected association assertions of standing to seek monetary, as distinguished from injunctive or declaratory, relief on behalf of the organization's members. *See, e.g., Simer v. Rios,* 661 F.2d 655, 682 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United Steelworkers v. University of Alabama,* 599 F.2d 56, 59 (5th Cir.1979); *Organization of Minority Vendors, Inc. v. Illinois Central Gulf R.R.,* 579 F.Supp. 574, 590 (N.D.Ill.1983). TRAC's counsel, in response to the court's inquiry at oral argument, addressed the state of precedent candidly. He could cite no decision on associational standing that allowed the association to proceed, as representative of a member or members, on a claim in which the immediate relief sought was damages. He added, however, that the decisions denying an organization's standing to represent its members in suits for monetary relief did not recite a *per se* rule. Nor do we recite such a rule today.

TRAC invites us to select this case to set the precedent not yet made because the alleged injury, TRAC contends, would not require individualized proof. *Cf. Warth, supra,* 422 U.S. at 515–16, 95 S.Ct. at 2213–14 (associational standing must be denied where injury alleged is "peculiar to the individual member concerned, and both the fact and extent of inquiry would require individualized proof"). Damages due the overcharged Allnet subscribers, TRAC maintains, can be calculated by applying a simple formula to the telephone calling data residing in Allnet's computers.[5] Were TRAC to succeed in establishing Allnet's liability, TRAC asserts, all that would remain would be to "fill in the blanks," a procedure which hardly "requires" the participation of the individuals affected.

We think we are not at liberty to break new ground in this case, and believe that the Supreme Court's reference to the need for "individual participation" in *Hunt* implied something more than individual in-court testimony to establish the fact and extent of injury. A court, in matters such as this, writes for a genre of cases, not for one day and case alone. While we have no reason to doubt the dedication of TRAC, we are mindful that

> [t]he number of members in [an] organization with a concrete stake in the outcome may be so small that th[e] theoretical identity [between the organization and its members] disappears.... Moreover, [an association] may have reasons for instituting a suit ... other than to assert rights of its members.

*Brock, supra,* —— U.S. at ——, 106 S.Ct. at 2537 (Powell, J., dissenting); *cf. id.* at ——, 106 S.Ct. at 2530 (majority opinion) ("many" union members had concrete stake in outcome).

---

**5.** The formula TRAC urged would operate roughly as follows. Prior to June 1, 1984, Allnet charged all subscribers 1) a fixed monthly fee, 2) a per minute usage charge for calls classified as "on-net," and 3) a higher per minute charge for "off-net" calls. Commencing June 1, for new subscribers only, Allnet eliminated both the monthly fee and the distinction between "on-net" and "off-net" calls; in place of these charges, Allnet introduced a single averaged per minute charge for all calls. Pre-June 1984 subscribers were brought into this new rate structure on January 1, 1985. *See* Complaint, ¶¶ 11–12, Joint Appendix (J.A.) at 11–12.

Under TRAC's damage formula, pre-June subscribers who made mostly "off-net" calls during the June-December period would receive a refund of the service fee plus the difference between what they were charged for these "off-net" calls and the amount they would have been charged under the new rate structure. *See id.* ¶¶ 17(a), 21(a), J.A. at 13–14, 15–16. Conversely, post-June subscribers who made calls which would have been classified as "on-net" under the old schedule would receive the difference between the averaged rates they were charged and the lower "on-net" rates they would have been charged had they subscribed before June 1, 1984.

Here, TRAC has identified only a handful—five or six—of its 12,000 members with a concrete stake in the outcome. More tellingly, TRAC's counsel stated at oral argument that the form of action the organization selected was influenced by this consideration: "[I]t didn't involve the kind of notice requirements and expense that a class action might." This colloquy took place:

> Court: Is it the notice—the cost of giving notice—that led you away from the class action?
>
> Counsel: That's correct in that there were virtually no up-front costs to the association in utilizing this remedy....

Were this suit brought as a class action on behalf of injured Allnet subscribers, it would fit under the category described in subdivision (b)(3) of Rule 23 of the Federal Rules of Civil Procedure. The court in such a case must ascertain whether the representative parties will fairly and adequately protect the entire class, FED.R. CIV.P. 23(a)(4), and must see to it that class members learn of the action through "the best notice practicable." FED.R.CIV.P. 23(c)(2); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 2975, 86 L.Ed.2d 628 (1985) (fourteenth amendment due process clause requires that state class action statute afford absent plaintiffs notice and an opportunity to "opt out" of action in which relief claimed is money damages). TRAC would avoid those responsibilities and safeguards. It asks to be declared representative of the few (five or six), not the many, whether the comparison group is all TRAC members or all Allnet subscribers June-December 1984. Even in an equitable relief context, TRAC's plea for standing would stray from the core concept of associational representation. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958) (association has standing to assert members' rights "because it and its members are in every practical sense identical [and it] is but the medium through which individual members seek to make more effective the

expression of their own views"); *Robinson v. Conslisk*, 385 F.Supp. 529, 538 (N.D.Ill. 1974) ("Since the League is the collective embodiment of its members, the League has standing to protect its members' rights against encroachment by third parties."); *cf. Action Alliance for Senior Citizens v. Shapp*, 400 F.Supp. 1208, 1213 (E.D.Pa. 1975) (court grants standing to association to seek injunctive relief to benefit 6 of its 3,500 members, while noting that "we might feel more confident of [the association's] taking a vigorous, adversarial stance had plaintiff been able to identify more members adversely affected by the Act"). *See generally Note, Associational Standing and Due Process: The Need for An Adequate Representation Scrutiny*, 61 B.U.L.REV. 174, 179–81 (1981) (discussing circumstances in which association may wish to pursue interests of its own not shared by its members).

While we do not think it necessary or proper to allow TRAC, in the circumstances before us, to circumvent Rule 23(b)(3) in the manner proposed, we reiterate that our decision establishes no *per se* rule that associations may never represent their members when monetary relief is immediately at stake. We do not confront in this case a situation in which the monetary relief sought is merely ancillary to prospective injunctive or declaratory relief. *Cf. Penson v. Terminal Transport Co.*, 634 F.2d 989, 994 (5th Cir.1981) (discussing "hybrid" 23(b)(2) class actions in which monetary relief, typically back pay, is sought in addition to classwide relief). Nor do we prejudge a case for damages in which the association possesses a special representational responsibility to the members on whose behalf it sues. *See, e.g., International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Acme Precision Products, Inc.*, 515 F.Supp. 537, 539–41 (E.D.Mich.1981) (labor unions are "proper representatives to assert the rights of their members" under § 301 of the Labor-Management Relations Act); *National Treasury Employees Union v. U.S. Merit Systems Protection*

*Board,* 743 F.2d 895, 908–11 (D.C.Cir. 1984) (one of labor union's "primary purposes ... is to represent the interests of its members in challenging employer action believed to be arbitrary or contrary to law"). *See also Youngdahl, Union Standing in Prosecution of Employment Discrimination Litigation: Questions of Class,* 38 ARK.L.REV. 24, 41–42 (1984) (arguing that labor unions, because they are obligated to represent all employees in collective bargaining units, should be accorded standing to recover damages for members in discrimination actions).

### CONCLUSION

TRAC lacks standing, under precedent currently prevailing, to pursue this case for damages. Even if the case is "properly resolved in a group context," *Hunt, supra,* 432 U.S. at 344, 97 S.Ct. at 2442, TRAC cannot pretend to represent the large group of similarly situated Allnet subscribers. For the reasons stated, the judgment of the district court dismissing the complaint is

*Affirmed.*

BORK, Circuit Judge, concurring:

I concur in the court's opinion. I write separately to suggest that, though the court properly does not decide the question, there may be good reason in the future to frame a *per se* rule against an association's standing, absent some specific statutory authorization, to assert damage claims on behalf of its members.

Counsel have cited no case which holds that an association has such standing. The only Supreme Court case to confront the issue is *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), where the Court's analysis expressly distinguished damage claims from claims for injunctive relief, and denied standing to a trade association that attempted to assert damage claims on behalf of some of its members. *Id.* at 515–16, 95 S.Ct. at 2213–14. In *Hunt*

*v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the plaintiff association sought injunctive and declaratory relief, but not damages. The Supreme Court set out a three-part test for associational standing in such cases, the third part of which requires that "neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit." *Id.* at 343, 97 S.Ct. at 2441 (emphasis added). The Court made no suggestion that relief in damages could ever satisfy this part of the test, and indeed reiterated that it has *never* granted standing to an association seeking to press the damage claims of its members. *Id.* (quoting *Warth,* 422 U.S. at 515, 95 S.Ct. at 2213). *See also International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Brock,* — U.S. ——, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (granting standing where the association sought only injunctive and declaratory relief, but not damages).

The court's opinion in this case correctly recognizes two problems that may arise if an association pursues damage claims on behalf of its members. First, if the damage claims are not "shared by all in equal degree," then "individualized proof" of "the fact and extent of injury" must be offered, which will often necessitate individual participation of the association's members in the suit. *Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2214. Second, where the damage claims "are not common to the entire membership," then "whatever injury may have been suffered is peculiar to the individual member concerned," and a question arises about the identity of interests between the association and its members. *Id.*[1]

This second problem gives rise to a third and very important concern. Associational standing to raise damage claims would impose heavy new burdens on the courts. In this case, for example, the court finds that TRAC does not have standing to press

---

1. Of course, this second problem could also arise when an association seeks injunctive or declaratory relief, and *Warth* offers no clear rationale that distinguishes those forms of relief

from damages. Nonetheless, the Court in *Warth* did assume that there is a distinction. *See* 422 U.S. at 515, 95 S.Ct. at 2213.

damage claims for five or six of its members. But how many members, short of its entire membership, would be enough to overcome this obstacle? When will the courts find a sufficient identity of interests between an association and its members to permit standing? More to the point, why should the courts now undertake the novel responsibility of making this determination when there are other options readily available to pursue these claims? In all such cases, the association's members could assign it their rights, or they could proceed by way of a class action.

By seeking associational standing in this case, TRAC is trying to avoid some of the burdens imposed by the class action mechanism. Yet it could easily increase the burdens on the courts. As the court here points out, if this suit had been brought as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, then *before the suit could proceed* the court would ascertain whether the representative parties will fairly and adequately protect the entire class and make certain that class members learn of the action through the best notice practicable. *See* Fed.R.Civ.P. 23(a)(4) & 23(c)(2). In contrast, if the association lost this suit, the question could arise later whether it had adequately represented the interests of its members so as to preclude them from bringing suit on their own. A court would then have to rule on that independent claim and might have to hear subsequent suits. *Cf. International Union,* 106 S.Ct. at 2533 ("were we presented with evidence that such a problem existed either here or in cases of this type, we would have to consider how it might be alleviated"). In addition, if the association prevailed and damage relief were granted, the court would then have to take steps through some new mechanism to assure that all appropriate members of the association are notified, or are included. Any shortcomings in this respect could again raise independent questions about the preclusive effect of such a judgment on those members. These new problems would all arise from this unnecessary circumvention of established class action procedures.

The court's opinion suggests that there may be instances in which associations may represent their members when monetary relief is immediately at stake, such as where the damages sought are merely ancillary to prospective injunctive or declaratory relief. I am not sure whether there may be such cases or not, but it is not immediately apparent how the fact that damages may be ancillary to other relief would avoid any of the problems mentioned. As for cases in which the association possesses a special representational responsibility to the members on whose behalf it sues, often this is tantamount to construing a statute as conferring standing upon an association, as may have been true in *Hunt.* Absent some direct statutory provision, however, I have considerable doubt about whether an association should be able to obtain standing by making a purely factual showing about its "special representational responsibility" to its members, thereby creating all the problems just discussed.