

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00396-CV

BIG ROCK INVESTORS
ASSOCIATION

APPELLANT

V.

BIG ROCK PETROLEUM, INC. AND
J.A. MCENTIRE, III

APPELLEES

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

The primary issue we address in this appeal is whether Appellant Big Rock Investors Association (BRIA) possesses standing to assert any of the claims it filed against Appellees Big Rock Petroleum, Inc. and J.A. McEntire, III. Because we hold that it does not, we affirm the trial court's judgment dismissing BRIA's claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

BRIA is a nonprofit association registered under the Texas Uniform Unincorporated Nonprofit Association Act. It was created to commence and prosecute its members' claims against Appellees. BRIA is comprised of approximately 226 individual or entity investors who invested approximately $26.8 million from November 1994 to June 2005 in approximately 117 different oil and gas drilling projects offered by Big Rock. BRIA filed suit on behalf of its member investors, alleging that Appellees and others participated in an oil and gas Ponzi scheme causing financial damages to BRIA's members.[1] BRIA pleaded that, following an FBI raid and the appointment of a receiver, "the Receiver has confirmed that a substantial majority of Projects . . . never existed or that Big Rock never had any interests in the Projects." On behalf of its members, BRIA pleaded causes of action against Appellees for violations of the Texas Securities Act, breach of fiduciary duty, constructive trust, and for attorneys' fees. BRIA prayed for the following relief: actual damages, special damages, rescission, constructive trust, exemplary damages, attorneys' fees, court costs, and pre- and post-judgment interest.

Appellees filed a plea to the jurisdiction and asserted that "[a]s a matter of law, an association such as BRIA cannot pursue the individual claims of its

---

[1]BRIA subsequently filed a first amended petition, but the trial court signed an order striking it, and BRIA makes no complaint concerning this order on appeal. Therefore, we consider only BRIA's original petition.

2

members." Appellees contended that BRIA's claims, as well as the relief requested by BRIA, required the participation of each individual member of BRIA and that, therefore, BRIA could not satisfy the third prong of the associational standing test established by the United States Supreme Court and adopted by the Texas Supreme Court. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977) (setting forth three-pronged associational standing test); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (adopting associational standing test set forth in *Hunt*).[2] Following a hearing, the trial court signed an order granting Appellees' plea to the jurisdiction and dismissing BRIA's claims. BRIA perfected this appeal; BRIA raises two issues claiming that the trial court erred by granting Appellees' plea to the jurisdiction because BRIA possesses associational standing and because BRIA possesses standing as an agent.

### III. STANDARD OF REVIEW

Standing is a component of subject-matter jurisdiction and must be established in order to maintain a lawsuit under Texas law. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. A plea to the jurisdiction is proper to challenge a party's lack of standing. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710–11

---

[2]While we are obligated to follow the dictates of only the United States Supreme Court and the Texas Supreme Court, we nonetheless draw on and discuss the associational standing precedent of other courts that also apply the *Hunt* test. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

3

(Tex. 2001); *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject-matter jurisdiction without regard to the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Bishop v. Bishop*, 74 S.W.3d 877, 878 (Tex. App.—San Antonio 2002, no pet.). The plaintiff bears the burden of alleging facts that affirmatively show the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Bishop*, 74 S.W.3d at 878. When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to the jurisdictional issue without considering the merits of the claim beyond the extent necessary to determine jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Applying this view of the pleadings and any jurisdictional evidence, whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226; *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999); *see also Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502–03 (Tex. 2010) ("It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction."), *cert. denied*, 131 S. Ct. 1017 (2011).

## IV.  STANDING

### A.  BRIA Lacks Associational Standing

### 1.  The Associational Standing Test

Article III of the United States Constitution limits the judicial power of the United States to the resolution of "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  One element of the case and controversy requirement under Article III is that the plaintiff, including an association, must have standing to raise each claim.  *See, e.g.*, *Comm. for Reasonable Reg. of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 365 F. Supp. 2d 1146, 1161 (D. Nev. 2005).  An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.  *Hunt*, 432 U.S. at 343, 97 S. Ct. at 2441; *Tex. Ass'n of Bus.*, 852 S.W.2d at 447.

Appellees concede that BRIA satisfies the first two prongs of the associational standing test.  BRIA's individual members would have standing to sue Appellees for Appellees' alleged roles in the Ponzi scheme, and the interests BRIA seeks to protect are germane to BRIA's purpose.  Whether BRIA possesses associational standing therefore turns on the third prong of the associational standing test, that is, whether BRIA's pleadings and the record demonstrate that neither the claims asserted by BRIA nor the relief requested by

BRIA requires the participation in the lawsuit of each of BRIA's individual members. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 448.

## 2. The Law Concerning the Third Prong of the Associational Standing Test

The third prong of the associational standing test—requiring that neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the association's individual members—is best seen as focusing on the matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557, 116 S. Ct. 1529, 1536 (1996). The third prong of the associational standing test is not constitutional but is prudential and is based on concerns of judicial economy.[3] *United Food*, 517 U.S. at 556–57, 116 S. Ct. at 1536.

Under the third prong of the associational standing test, determining what type of claims brought by an association and what type of relief sought by an association would or would not require the participation in the litigation of the association's individual members and therefore would or would not advance prudential concerns of administrative convenience, efficiency, and judicial

---

[3]Because the third prong of the associational standing test is not constitutional, Congress can abrogate this standing requirement in certain circumstances. *See, e.g.*, *id.* at 558, 116 S. Ct. at 1537 (holding that Congress could authorize union to sue on behalf of its members); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (recognizing that Congress had authorized advocacy groups to sue on behalf of mentally ill criminal defendants). But Congress has not abrogated the third prong of the associational standing requirement in BRIA's claims against Appellees.

economy is somewhat tricky. Usually, an association's claim for damages on behalf of its members is barred by want of the association's standing to sue because such suits typically require each individual member to participate in the litigation to establish his own damages. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 516, 95 S. Ct. 2197, 2214 (1975) ("Thus, to obtain relief in damages, each member of Home Builders who claims injury . . . m[u]st be a party to the suit."); *Telecomms. Research & Action Ctr. on Behalf of Checknoff v. Allnet Comm. Servs., Inc.*, 806 F.2d 1093, 1094 (D.C. Cir. 1986) (holding that "the money damages claims TRAC seeks to advance are the kind that ordinarily require individual participation" and that associational standing did not exist). For example, in *Warth*, the United States Supreme Court held that an association of construction firms could not seek damages for the profits and business lost by its members because "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515–16, 95 S. Ct. at 2214. The Supreme Court explained:

> [H]ere an association seeks relief in damages for alleged injuries to its members. Home Builders [the association] alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices m[u]st be a

7

party to the suit, and Home Builders has no standing to claim damages on his behalf.

*Id.*, 95 S. Ct. at 2214. Thus, when claims for damages have not been assigned to an association, when the relief sought by an association is monetary damages for alleged injuries to individual members, and when the damages claimed are not common to the entire membership, nor shared by all to an equal degree, then each individual member must be a party to the suit; the association possesses no standing to claim damages on behalf of its members. *Id.*, 95 S. Ct. at 2214; *see also United Food*, 517 U.S. at 546, 116 S. Ct. 1531 (recognizing general rule set forth in *Hunt* is that "an association's action for damages running solely to its members would be barred for want of the association's standing to sue"); *Ga. Cemetery Ass'n, Inc. v. Cox*, 353 F.3d 1319, 1322–23 (11th Cir. 2003) (per curiam) (holding associational standing did not exist to assert as-applied takings claim because such claim "will vary depending upon the economic circumstances" of each member); *Telecomms. Research & Action Ctr. on Behalf of Checknoff*, 806 F.2d at 1094–95 (holding claim for money damages required participation of association's individual members so that no associational standing existed); *Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*, 990 F. Supp. 245, 248–49 (S.D.N.Y. 1997) (holding associational standing did not exist to assert a takings claim because a particularized analysis of each owner's circumstances was required).

When, however, an association seeks a declaration, injunction, or some other form of prospective equitable relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured and that, consequently, prudential concerns are advanced and the association may possess standing to invoke the court's remedial powers on behalf of its members. *Tex. Ass'n of Bus.*, 852 S.W.2d at 448 (holding that "TAB seeks only prospective relief, raises only issues of law, and need not prove the individual circumstance of its members to obtain that relief, thus meeting the third prong" of the associational standing test); *see also Hunt*, 432 U.S. at 343–44, 97 S. Ct. at 2441–42 (recognizing that neither the commission's "interstate commerce claim nor [its] request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context"); *City of Laredo v. Rio Grande H20 Guardian*, No. 04-10-00872-CV, 2011 WL 3122205, at *6 (Tex. App.—San Antonio July 27, 2011, no pet.) (mem. op.) (holding that because Rio Grande sought "prospective relief in the form of a declaration that the enacted zoning ordinances were invalid, relief that is not dependent on proof of the individual circumstances of its members," Rio Grande had satisfied the third associational standing prong). For example, in *Texas Ass'n of Business*, the association possessed associational standing to assert a facial challenge to the constitutionality of an administrative enforcement scheme for the assessment of civil penalties. 852 S.W.2d at 443.

But merely pleading for equitable relief does not automatically satisfy the third prong of the associational standing test. *See Am. Acad. of Emergency Med. v. Memorial Hermann Healthcare Sys., Inc.*, 285 S.W.3d 35, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding no associational standing existed to assert declaratory judgment action because declaration sought did not present "pure issues of law, but instead require[d] individualized inquiry and fact-intensive analysis"); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (recognizing associational standing was absent even though injunctive relief sought when fact and extent of the injury giving rise to claims for injunctive relief would require individualized proof). And, likewise, given the fact that the third prong of the associational standing test is a prudential consideration, the mere fact that some level of individualized evidence is required does not automatically thwart the existence of associational standing. *See, e.g.*, *Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551–52 (5th Cir. 2010) (recognizing that when claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry, the participation of those individual members will not defeat associational standing); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 287 (3d Cir.) (holding associational standing not defeated by need for limited individual member participation), *cert. denied*, 537 U.S. 881 (2002). Instead, courts look to whether a plaintiff association that is pleading for equitable relief on behalf of its members has established that any individualized evidence required to prosecute

10

the claim would be duplicative and redundant, thus advancing prudential concerns and judicial economy by granting associational standing. *See, e.g.*, *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89–90 (3rd Cir. 1991) (recognizing associational standing not defeated by participation of representative member hospitals in association's claim for equitable and injunctive relief from city's efforts to "coerce" payment of taxes by tax-exempt member hospitals). In other words, when resolution of the claims can be proven by evidence from representative injured members without a fact-intensive-individual inquiry, the need for participation of those individual members will not defeat associational standing. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 601–02 (7th Cir. 1993).

### 3. Analysis of the Claims Asserted and the Relief Requested by BRIA

BRIA pleaded that Appellees sold to hundreds of investors located throughout the United States millions of dollars' worth of fraudulent securities in the form of fictitious working interests in oil and gas drilling projects and pipelines. BRIA alleged that Appellees comingled investor funds and falsified oil and gas production reports. BRIA pleaded causes of action for violations of the Texas Securities Act, breach of fiduciary duty, constructive trust, and for attorneys' fees and prayed for actual damages, special damages, rescission, constructive trust, exemplary damages, attorneys' fees, court costs, and pre- and post-judgment interest.

11

Appellees argue on appeal that BRIA's 226 members do not share a common investment portfolio, invested in over 100 separate projects in varying amounts, and reaped profits or incurred losses in different amounts over a ten-year period from November 1994 to June 2005. Appellees contend that each investment transaction is unique and that the amount of each investor's gains or losses is unique, requiring a fact-intensive participation in the litigation by each BRIA member. BRIA does not dispute these facts; BRIA does not deny that each of the claims it asserts, as well as the relief it requests, requires proof of investments made and damages suffered by each of its individual members. Instead, BRIA claims that it intends to retain a damage expert and that the expert's testimony, coupled with the testimony of a receiver previously appointed by the trial court,[4] will minimize the need for the participation of the individual members of BRIA in the litigation.[5]

---

[4]BRIA attached an affidavit from the receiver to its appellate brief, quotes extensively from the affidavit in the argument section of its brief, and requests that we take judicial notice of the affidavit. We decline to take judicial notice of the affidavit. *See, e.g., Thornton v. Cash*, No. 14-11-01092-CV, 2013 WL 1683650, at *14 (Tex. App.—Houston [14th Dist.] Apr. 18, 2013, no pet.) (mem. op.) (declining to take judicial notice of documents attached to appellate brief and noting that appellate court review is limited to consideration of material before trial court). We nonetheless discuss the affidavit's content because it is quoted extensively in BRIA's brief and shows that even if given the opportunity to replead, BRIA cannot satisfy the third prong of the associational standing test. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–840 (Tex. 2007) (holding appellants are not entitled to replead a claim unless it is possible for them to cure the jurisdictional defect).

[5]BRIA cites *Darocy v. Abildtrup* for the proposition that minimal participation of its individual members would be required in the prosecution of its

12

BRIA contends that individual member participation in the litigation would be minimal because—in accordance with the following quoted statement in his affidavit—the receiver "could and would testify regarding the financial losses sustained by the individual plaintiffs in this case with reasonable certainty, with minimal participation by the individual plaintiffs."  This is not the type of non-fact-intensive, minimal participation envisioned by the third prong of the associational standing test; the evidence is not duplicative, redundant, or elicited from representative injured members.  *See Assoc. of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 551–52; *Pa. Psychiatric Soc'y*, 280 F.3d at 287; *Hosp. Council of W. Pa.*, 949 F.2d at 89–90.  Substituting the testimony of one person (the receiver) concerning the individual profits and losses of each of BRIA's 226 individual members is no less fact-intensive than simply permitting each individual member to provide such testimony concerning his profits and losses.  This type of fact-intensive analysis, even if performed through one witness, raises the type of real and substantial prudential concerns found to thwart a determination of associational standing under the third prong of the associational standing test.  *See Warth*, 422 U.S. at 515, 95 S. Ct. at 2214.

We overrule BRIA's second issue.

---

Texas Securities Act violations claim.  345 S.W.3d 129 (Tex. App.—Dallas 2011, no pet.).  But in *Darocy*, individual investors, not an association, brought suit.  *See id.* at 132.  Thus, *Darocy* is not applicable to our associational standing analysis.

13

## B. BRIA Lacks Standing to Sue as an Agent of its Members

In its first issue, BRIA contends that it possesses standing by virtue of the claims management agreement signed by each BRIA member. BRIA characterizes each of these agreements as a power of attorney and concedes that its members did not execute an assignment of their claims to BRIA.[6] In support of this contention, BRIA relies upon *Rodarte v. Investco Group*, 299 S.W.3d 400 (Tex. App.—Houston [14th Dist] 2009, no pet.).

*Rodarte* did not involve associational standing; it involved a man filing suit in his own name pursuant to a power of attorney on behalf of his brother. *Id.* at 406–07. BRIA argues that just like the man in *Rodarte*, it filed suit on behalf of its members pursuant to a power of attorney. But BRIA is a nonprofit association, not an individual. BRIA cites no authority for the proposition that by virtue of obtaining a power of attorney from its members, it exempted itself from establishing the third prong of the associational standing test. To the contrary, BRIA's claims on behalf of 226 individual members seeking financial redress for widely-varied investments made in diverse projects over a ten-year period raise exactly the substantial prudential concerns identified by the third prong of the associational standing test as precluding an association that is suing on behalf of its members from invoking the court's remedial powers.

---

[6]Because BRIA acknowledges that the claims management agreements do not constitute an assignment of its members' claims to BRIA, we do not address the cases BRIA cites concerning assignments.

We overrule BRIA's first issue.

## V. CONCLUSION

Having overruled both of BRIA's issues, we affirm the trial court's grant of Appellees' plea to the jurisdiction and its judgment dismissing BRIA's claims.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  August 15, 2013

15