# Supreme Court of Texas

No. 22-0631

The Boeing Company,

*Petitioner*,

v.

Southwest Airlines Pilots Association (SWAPA) on behalf of itself and its members,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE BLAND, joined by Justice Huddle, dissenting in part.

Our Court carefully scrutinizes assignments of legal causes of action because such assignments uncouple the damages suffered from the party seeking recompense in court.[1] And in other ways, assignments

---

[1] *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 706–07 (Tex. 1996) (explaining that this original concern of assignability—that a "claim or cause of action was part of a right of redress that was personal to the holder by virtue of the injury suffered and thus incapable of transfer"— remains today); *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners L.P.*, 146 S.W.3d 79, 89 (Tex. 2004) ("If consumers can assign their DTPA claims, they may still have to testify at trial about the nature, duration, and severity of their mental anguish, but someone else will keep the money.").

skew litigation incentives and outcomes. This case involves the assignment of more than 8,000 individual claims to one nonprofit association, something unheard of in Texas law.

For good reason. Business Organizations Code Section 252.007 does not grant nonprofit associations the right to pursue claims on behalf of their individual members if the lawsuit requires the members' participation. The statute thus precludes the Southwest Airlines Pilots Association from pursuing claims to recover its pilots' individual damages resulting from the 737 MAX's grounding. Today, however, the Court permits an association to seek individual damages if the association—which cannot bring such claims by statute—gathers assignments from its members and, still contrary to statute, sues on their behalf. To permit assignments such as these hollows out the Legislature's careful limits as to the types of claims associations can bring.

Our assignment jurisprudence should cohere with the statute that governs the assignee. I join the Court's opinion as it pertains to preemption—even though the Court's assignment holding jeopardizes its preemption holding by permitting a party to a collective bargaining agreement governed by the Railway Labor Act to sue for compensatory damages allegedly sustained under that agreement. The Court should reinstate the trial court's dismissal with prejudice of SWAPA's claims for money damages sought on behalf of its members. Accordingly, I do not join Part III of the Court's opinion and respectfully dissent from the portion of its judgment remanding those claims to the trial court.

**I**

Following the grounding of the 737 MAX aircraft, SWAPA sued Boeing, asserting claims on behalf of itself and its member pilots. SWAPA sought damages for the pilots for lost compensation resulting from the grounding. Boeing filed a plea to the jurisdiction, arguing in part that SWAPA lacked associational standing to bring claims on behalf of its members. In response, over 8,000 SWAPA members executed assignments of their claims against Boeing to SWAPA. Boeing then amended its plea to argue that the assignments are void because they circumvent the statute prohibiting associations from asserting claims on behalf of their members if such claims require their members' individual participation.

The trial court granted Boeing's jurisdictional plea and dismissed the suit. On interlocutory appeal, the court of appeals held that the assignments are not void as against public policy.[2] While the assignments did not cure the jurisdictional issues in this suit because they occurred after it was filed, the court of appeals modified the trial court's dismissal to be without prejudice so that SWAPA could assert the claims of its members by assignment in a future suit.[3]

**A**

Under the Business Organizations Code, a nonprofit association has standing to assert a claim on behalf of its members if: "(1) one or more of the nonprofit association's members have standing to assert a

---

[2] 704 S.W.3d 832, 848 (Tex. App.—Dallas 2022).

[3] *Id.*

3

claim in their own right; (2) the interests the nonprofit association seeks to protect are germane to its purposes; and (3) neither the claim asserted nor the relief requested requires the participation of a member."[4]

At issue here is the third requirement: whether the claim asserted, or the relief requested, requires individual participation.[5] This requirement "depends in substantial measure on the nature of the relief sought."[6] Prospective relief will ordinarily not require individual participation as "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."[7] However, when an association seeks damages for its members that are "not common to the entire membership, nor shared by all in equal degree," individualized proof is required, and the third requirement cannot be met.[8] Notably, the statute does not limit its prohibition to any particular kind of standing—it does not parse standing by association or standing by assignment. It simply does not authorize an association to sue for damages that require individual member participation.

---

[4] Tex. Bus. Orgs. Code § 252.007(b).

[5] *Id.* § 252.007(b)(3).

[6] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

[7] *Id.* (quoting *Hunt*, 432 U.S. at 343); *see also Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.").

[8] *Warth*, 422 U.S. at 515.

4

SWAPA's petition in this case seeks such damages. It requests "millions of dollars in lost compensation" on behalf of its member pilots stemming from the grounding of the 737 MAX. Pilots are paid via a formula, according to SWAPA's expert, who claimed that he could compute the total amount of lost compensation before and after the grounding by comparing differences in Southwest's flight schedules. Each pilot would then be entitled to "the share of damages that is equal to his or her share of total pilot compensation." To calculate this share, the expert would rely on each pilot's individual tax records. Even though pilot compensation would be wholly dependent on individual tax and employment records, he claimed no individual participation would be required because his *calculations* did not require pilot assistance.[9]

But the numbers the expert planned to use as a basis for these calculations absolutely would: in the form of individual flight schedules, individual salaries, and individual tax records. SWAPA must prove these varying amounts of lost compensation resulting from the MAX's grounding for each of its member pilots to obtain its requested relief. It proposes to do so by combing through the tax records of each of its over 8,000 members, which presumably provide salary and flight–time

---

[9] Courts of appeals faced with similar damages claims have held that expert testimony does not obviate the need for member participation. In *Big Rock Investors Ass'n v. Big Rock Petroleum, Inc.*, an association sought varying damages for each of its members but argued that their participation was not necessary because an expert could testify as to individual amounts. 409 S.W.3d 845, 851–52 (Tex. App.—Fort Worth 2013, pet. denied). The court held the no-participation requirement was not satisfied because the expert's proposed testimony "is no less fact-intensive than simply permitting each individual member to provide such testimony concerning his profits and losses." *Id.* at 852.

5

information for each individual member. As the court of appeals correctly observed, numerous other variations among individual members remain: "individual assignments, whether they were reassigned to other aircraft, seniority, experience, level of compensation, retirement, military reserve duty, and disability."[10]

The process would thus be a "fact-intensive-individual inquiry," requiring proof of each member's individual circumstances.[11] The assignments themselves prove this point. Paragraph four provides:

> Damages recovered from Boeing in the Litigation or a settlement will be distributed in an equitable manner *in proportion to gross W-2 earnings per pilot for the period* of May 1, 2019 through the date that Southwest returns the 737 MAX into revenue service, *less [a member's] proportional share* of all fees, expenses and financing costs associated with the Litigation.[12]

In these circumstances, Section 252.007(b) does not authorize SWAPA to seek money damages because it must provide evidence of the members' individual damages to prevail.

**B**

The court of appeals held that SWAPA lacked associational standing because its damages claims required individual participation, and I agree with the Court that SWAPA waived that issue by not filing a cross-petition for review of the court of appeals' judgment.[13] The Court

---

[10] 704 S.W.3d at 845.

[11] *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010).

[12] Emphasis supplied.

[13] *Ante* at 15–16 n.21.

6

further holds, however, that SWAPA can pursue these same claims as an assignee of its members' claims. Such a holding guts the limited standing authorization the Legislature has granted to SWAPA. The Court's holding permits SWAPA to proceed when the statute says it cannot.

While assignment of legal causes of action is permitted, "the common law's reservations to alienability . . . [and] the role of equity or policy in shaping the rule" remain.[14] Prohibited assignments include those "that tend to increase or prolong litigation unnecessarily, tend to distort the litigation process, or are otherwise inconsistent with the purpose of a statutory cause of action."[15] It remains the prerogative of the courts to determine whether equity and public policy require invalidation of assignments in circumstances that have not been recognized.[16]

This case presents such a circumstance. Statutes express the public policy of Texas.[17] Section 252.007, by its plain text, grants associations the authority to pursue claims "on behalf of" their members in limited circumstances only—whether by association or by assignment. SWAPA's claims for money damages for individual lost

---

[14] *Gandy*, 925 S.W.2d at 707.

[15] *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010).

[16] *See PPG Indus., Inc.*, 146 S.W.3d at 87 ("But the assignability of *most* claims does not mean *all* are assignable; exceptions may be required due to equity and public policy." (internal citation omitted)).

[17] *Town of Flower Mound v. Stafford Ests. L.P.*, 135 S.W.3d 620, 628 (Tex. 2004).

wages do not fall within these limited circumstances. The assignments do not change the fundamental fact that SWAPA's suit requires individual participation, with claims of varying amounts of individual damages. Moreover, these assignments require payments to each pilot based on the pilot's income should SWAPA obtain a recovery in the suit. The assignments are nothing more than an attempt to circumvent the statute's limits.

We invalidated assignments that similarly would have frustrated the intent of the Legislature in *PPG Industries, Inc. v. JMB/Houston Centers Partners L.P.*[18] That case involved the Deceptive Trade Practices Act, which limited its causes of action to "consumers."[19] In holding that such claims were not assignable, we reasoned that allowing assignment could allow "a party excluded by the statute . . . [to] nevertheless assert DTPA claims by stepping into the shoes of a qualifying assignor."[20] We also raised the concern that the Act's treble damages provisions, intended to motivate affected consumers, could instead motivate those "considering litigation for commercial profit."[21] Together, assignment would "defeat the very purposes for which the DTPA was enacted."[22] Permitting SWAPA to proceed as an assignee of claims brought on behalf of individual pilots would also "defeat the very

---

[18] 146 S.W.3d at 82.

[19] *Id.* at 85 (quoting Tex. Bus. & Com. Code § 17.45(4)).

[20] *Id.*

[21] *Id.*

[22] *Id.* at 87.

purposes" for which the Legislature enacted limits on the claims associations can bring.

The Court seems to share this concern.[23] But it nonetheless states that SWAPA may prevail on the assigned claims by "proving Boeing's liability to the individual member who assigned it and the damages that member sustained."[24] In other words, SWAPA may assert and prevail on claims that require individual participation—just what Section 252.007 prevents it from doing. The Court justifies this inconsistency by asserting that standing by assignment and associational standing are equally permissible alternatives for associations seeking to recover damages its members individually sustained.[25] While an assignee ordinarily "steps into the shoes" of an assignor and can pursue claims the assignor holds, the assignments in this case obligate SWAPA to remit the proceeds of its lawsuit back to its assignor members.[26]

---

[23] *See ante* at 23 ("In determining how to resolve those claims, the trial court . . . must ensure that SWAPA pursues the claims as an assignee and not as a representative association."). The statute does not differentiate between claims that SWAPA brings as an association or as an assignee. Particularly in this case, in which SWAPA's intent is to remit damages back to individual members—whether by associational standing or by assignment—the distinction is one without a difference.

[24] *Id.*

[25] *Id.* at 21.

[26] *Sw. Bell Tel. Co.*, 308 S.W.3d at 916. Such provisions call into question whether the association has a sufficient stake in the litigation to even claim standing by assignment. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 300 (2008) (Roberts, C.J., dissenting) ("An assignee who has acquired the bare legal right to prosecute a claim but no right to the substantive recovery cannot show that he has a personal stake in the litigation.").

9

Associations are now free to bring claims requiring member participation. Our proper focus should be on the substance of the claims, not the presentment of them.

Perhaps recognizing the fallacy of considering two avenues for standing as "alternative[s]"—with one permitting claims the other prohibits—the Court states that the Legislature should have prohibited assignments if it so intended.[27] It is entirely superfluous to expect the Legislature to codify that associations cannot circumvent the statute's limited grant of authority to bring suits on behalf of their members.

The Court does not grapple with these concerns, relying instead on a sentence fragment from the United States Supreme Court and observing that assignment and associational standing have "distinct requirements."[28] Important to the question presented in this case, however, is whether such distinctions make a difference. They do not in this case. Either way, SWAPA must prove the individual circumstances of its members. Our historic aversion to assignment counsels toward subordinating assignments to the statutory limits placed on nonprofit

---

[27] *Ante* at 21.

[28] *Id.* The United States Supreme Court stated in *Warth v. Seldin* that an association "allege[d] no monetary injury to itself, nor any assignment of the damages claims of its members" when explaining why the association could not receive an award "as such." 422 U.S. at 515. The Court then held that the organization lacked associational standing because the damages claims it asserted required individualized proof. *Id.* at 515–16. *Warth* does not confront the tension between associational standing limitations and the assignment of claims to an organization barred from asserting them by those limitations.

associations instead of elevating them over the expressed public policy of our state.[29]

The Court cites no case before today permitting a nonprofit association to act as the assignee of thousands of its members' damages claims. With the Court's opinion in hand, nonprofit organizations are free to become clearinghouses for mass torts—with none of the protections that other mass-action vehicles afford.[30] New associations could form to bring such claims and ensure the assignment agreements reserve a portion of each member's damages to the association. That is assuming, of course, that the association diligently pursues such claims, which it has no obligation to do as an assignee. As in this case, nonprofits will become vehicles for third-party litigation financing, the costs of which the assignment requires SWAPA's individual members to bear.

The Court is nevertheless content to ground its holding in the fact that the assignments do not violate public policy because—in an

---

[29] *See Gandy*, 925 S.W.2d at 707 ("Practicalities of the modern world have made free alienation of choses in action the general rule, but they have not entirely dispelled the common law's reservations to alienability, or displaced the role of equity or policy in shaping the rule. Even today, the general rule is that a contractual assignment may be inoperative on grounds of public policy." (internal quotations omitted)).

[30] *E.g.*, Tex. R. Civ. P. 42(a)(4) (permitting class actions only if "the representative parties will fairly and adequately protect the interests of the class"). These protections are not limited to plaintiffs. Defendants, for example, can challenge a trial court's order certifying a class under Rule 42. *Id.* R. 42(c)(1)(A); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3) (permitting interlocutory appeal of class–certification orders). No similar vehicle exists if a well-financed nonprofit unilaterally decides to bring a mass action of assigned claims as SWAPA does here.

optimistically omniscient view—a labor association's involvement will not protract the litigation or drive up its costs.[31]

Finally, claims for individual damages that arise out of compensation provided in a collective bargaining agreement disrupt the relationship between common carriers and their equipment providers. When brought by a plaintiff that is also a party to that bargaining agreement, such a suit comes closer to conflicting with the Railway Labor Act's express purpose to govern all claims relating to collective bargaining agreements and the compensation derived therefrom.[32] State laws must be careful not to unduly intrude into the interstate railway and air travel systems. Given its limits, our state law does not conflict with the Act—an expansive interpretation of that law allowing for money damages based on the collective bargaining agreement, less so.

\* \* \*

The Southwest Airlines Pilots Association lacks the authority to pursue individual damages claims that involve their members. We therefore should uphold the trial court's dismissal of SWAPA's claims for its pilots' individual damages. As the Court permits SWAPA to bring such claims despite the statutory limit on its authority to do so, I do not

---

[31] *Ante* at 19.

[32] *See* 45 U.S.C. § 151a ("The purposes of the chapter are . . . to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.").

join Part III of its opinion and respectfully dissent from its judgment remanding those claims to the trial court.[33]

_____

Jane N. Bland
Justice

**OPINION FILED:** June 20, 2025

_____

[33] For these reasons, I would also grant the petition for review in the companion case (No. 22-1124) that SWAPA filed as an assignee. We should reinstate the trial court's judgment granting Boeing's motion to dismiss in that case.