**NEW HAMPSHIRE MOTOR TRANS-
PORT ASSOCIATION, et al.,
Plaintiffs**

v.

**G. Steven ROWE, in his Official
Capacity as Attorney General of
the State of Maine, Defendant**

No. CIV.03–178–B–H.

United States District Court,
D. Maine.

June 30, 2004.

Michael A. Nelson, Jensen, Baird, Gardner & Henry, Portland, ME, Lawrence R. Katzin, Paul T. Friedman, Ruth N. Borenstein, Morrison & Foerester LLP, San Francisco, CA, for New Hampshire Motor Transport Association, Massachusetts Motor Transportation Association, Inc., Vermont Truck and Bus Association, Inc., Plaintiffs.

Melissa Reynolds O'Dea, Paul D. Stern, Office of the Maine Attorney General, Augusta, ME, for G. Steven Rowe, in his official capacity as Attorney General for the State of Maine, Defendant.

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PARTIAL MOTION TO DISMISS

HORNBY, District Judge.

Earlier I ruled (on the plaintiff carrier associations' motion) that federal law does not preempt certain challenged provisions of Maine's Tobacco Delivery Law. I now grant partial summary judgment to the Maine Attorney General on that claim. I also conclude that the carrier associations have standing to assert an as-applied preemption challenge to the statute even though they rely on its effects on a particular association member.

ANALYSIS

### (1) The Facial Challenge

New Hampshire Motor Transport Association, Massachusetts Motor Transport Association, Inc., and Vermont Truck & Bus Association, Inc. ("the carrier associations") are non-profit trade associations whose members are in the interstate transportation business. Previously, they moved for summary judgment arguing that, by their express terms, three provisions of Maine's Tobacco Delivery Law— 22 M.R.S.A. §§ 1555–C(3)(A), 1555–C(3)(C), and 1555–D—are facially preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). *See N.H. Motor Transp. Ass'n v. Rowe*, 301 F.Supp.2d 38, 40 (D.Me.2004). I disagreed, concluding that federal law does not completely foreclose Maine from exercising its traditional police powers to restrict delivery of tobacco. *Id.* I therefore held that the FAAAA did not facially preempt the Maine statutory provisions, and denied the carrier associations' motion for summary judgment. *Id.* at 46.

In light of my earlier ruling, the defendant Maine Attorney General now requests that I enter partial summary judgment in his favor on all Counts as to any facial challenge. The carrier associations resist this motion arguing that: (1) a further "evidentiary showing" is necessary to rule on this issue; (2) my earlier decision relied on statutes not addressed by the parties; and (3) the carrier associations' Complaint does not assert a facial challenge.

First, discovery or an "evidentiary showing" on the effect of the challenged provisions of Maine's Tobacco Delivery Law is not necessary to a ruling on a facial preemption challenge. As the carrier associations argued when they brought the

motion initially, such a ruling examines only the express terms of the statute, not the actual effect of the law. *See id.* at 40 n. 2.

■ Second, I did take judicial notice of Maine's and other states' statutes to determine whether Maine was exercising a traditional police power in restricting the delivery of tobacco. *See id.* at 44–45 & n. 13. That research and analysis was appropriate, regardless of whether the parties cited the particular statutes to which I referred. (It is not unusual for a judge to rely on a case or statute that the parties did not cite.) It was essential to examine such laws in assessing the presumption against preemption when Congress legislates in a field traditionally regulated by a state pursuant to their historic police powers. *See, e.g., United Parcel Serv., Inc. v. Flores–Galarza,* 318 F.3d 323, 336 (1st Cir.2003); *Greenwood Trust Co. v. Mass.,* 971 F.2d 818, 823 (1st Cir.1992).

Third, I am perplexed by the carrier associations' argument that "[t]here is no 'Facial Preemption Claim' in the Complaint on which the Attorney General could be granted judgment." Pls.' Opp'n to Def.'s Mot. for Partial Summ. J. and Partial Mot. to Dismiss ("Pls.' Opp'n") at 2 (Docket Item 41). To be sure, the Complaint states two causes of action (under the Supremacy Clause and the Declaratory Relief Act), and neither is entitled "Facial Challenge." But the Complaint also asserts that the Maine provisions are preempted by federal law because they "expressly refer to" and "have a significant effect on" motor carrier services. *See* Compl. ¶¶ 30–31 (Docket Item 1).

It was the carrier associations who embarked upon a bifurcated summary judgment strategy, first asserting a facial challenge "based on the face of the statute," and promising, if their facial attack was unsuccessful, an as-applied challenge.[1] At the conference of counsel held on January 8, 2004, the carrier associations' attorney stated:

> [W]hat we have tried to do is make an initial motion to try to get an expeditious resolution without going into the facts *based on the face of the statute,* expressed terms of the statute, saying that it is preempted without making a showing in all ways in which the challenged provisions affects carriers' prices throughout. So we want to try and do this, move for summary judgment just based on the expressed terms of the statute.

Tr. of Conf. of Counsel at 3 (Jan. 8, 2004) (Docket Item 25) (emphasis added). Thus, it was clear to everyone that as a first step the carrier associations were pursuing a facial challenge. At the conference, I later stated "Assuming I'm going to deal with the facials first, since you are here I want to consider what might happen in either direction. If I don't strike it down facially

---

1. In a footnote, the carrier associations state: "The 'facial' and 'as-applied' labels are not particularly suitable here because, in this action, the Carriers only challenge 22 M.R.S.A. section 1555–D 'as applied' to motor carriers and air/ground intermodal carriers. (*See* Compl. ¶ 2(b).) That 'as applied' limitation existed even in the Carriers' 'express terms' motion. Nonetheless, for simplicity, the Carriers will use the label 'facial' to refer to their 'express terms' motion, and will use the label 'as applied' to refer to their forthcoming evidence-based 'in effect' motion." Pls.' Opp'n at 2 n. 1. To the extent I understand the footnote, the carrier associations are stating that they can challenge only the Maine law provisions that apply to their members as ground carriers (*i.e.,* they cannot challenge the provisions as they are applied to other entities). In any event, the choice of terms used in labeling these different challenges in no way affects the substantive outcome of my decision on the "facial" or "express terms" motion.

then there will be the issue [on the] facts, I take it." *Id.* at 6.

Now, the Maine Attorney General asks for partial summary judgment on the same facial challenge issue the carrier associations brought earlier. Although the "facial challenge" is not a cause of action in the carrier associations' Complaint, the Maine Attorney General is certainly entitled to request partial summary judgment to limit the scope of relief available or the legal breadth of the causes of action. In my earlier order, I concluded that on a facial challenge, determined only by reading the express terms of the statute, the FAAAA did not preempt the challenged provisions of Maine Tobacco Delivery Law. *N.H. Motor Transp. Ass'n,* 301 F.Supp.2d at 46. I therefore GRANT the defendant's motion for partial summary judgment on all counts as to any facial FAAAA preemption challenges to 22 M.R.S.A. §§ 1555–C(3)(A), 1555–C(3)(C), and 1555–D.

### (2) Associational Standing

■ The Maine Attorney General moves for dismissal of the Complaint on the basis that the plaintiff carrier associations lack standing to bring any as-applied challenges on behalf of their members.[2] Primarily, the Maine Attorney General is

concerned that the whole premise of the plaintiffs' challenge to the law is based upon its effect on United Parcel Service ("UPS"), yet UPS is not a party to the suit. The Maine Attorney General feels unfairly prejudiced in not being able to treat UPS as a party (with any procedural or substantive advantages that follow) in preparing the case for trial.

■ The United States Supreme Court has recognized that standing doctrine is comprised of both Article III constitutional considerations and prudential concerns. *See, e.g., Elk Grove Unified Sch. Dist. v. Newdow,* —— U.S. ——, 124 S.Ct. 2301, 2308–09, 159 L.Ed.2d 98 (2004). For associations like these carrier associations, in *Hunt v. Wash, State Apple Adver. Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court announced a three-part associational standing test: "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343. The Maine Attorney General as-

2. The carrier associations argue that the Maine Attorney General's motion to dismiss should be denied as untimely under Fed. R.Civ.P. 12(b) because the Attorney General had previously filed an Answer, and "[a] motion making any of these defenses shall be made before pleading." *See* Pls.' Opp'n at 4 n. 6 (citing Fed.R.Civ.P. 12(b)(6)). The Maine Attorney General filed his Answer on November 3, 2003. His motion to dismiss was filed April 15, 2004. But in his Answer the Maine Attorney General raised the affirmative defense that the plaintiffs lacked standing. *See* Answer, Seventh Affirmative Defense at 7 (Docket Item 15). Thus, his so-called motion to dismiss only brought forward for hearing and decision a defense he had timely raised. Moreover, the defense of failure to state a

claim is timely up until trial. Under Fed. R.Civ.P. 12(h)(2), "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgments on the pleadings, *or at the trial on the merits.*" (emphasis added.) *See also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361, at 446–47 (1990) ("Moreover, under Rule 12(h) the defenses of ... Rule 12(b)(6) ... are preserved from the waiver mechanism in Rule 12(h). Thus, motions raising any of these matters may be considered by the court even when interposed after the responsive pleading has been filed, although technically they no longer are Rule 12(b) motions.").

serts that the carrier associations here lack standing under the third prong of *Hunt*, arguing that the participation of individual members—primarily UPS—is required. This third prong of *Hunt* is prudential in nature, raising concerns of "administrative convenience and efficiency." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

In their as-applied challenge, the carrier associations believe that they need only show that Maine's Tobacco Delivery Law has a "forbidden significant effect," *see Flores–Galarza*, 318 F.3d at 335, on "*a* price, route, or service of *any* motor carrier." 49 U.S.C. § 14501(c)(1) (1997) (emphasis added). In light of this FAAAA statutory language, the carrier associations intend to rely on the Maine Tobacco Delivery Law's effects on only one association member, UPS. *See* Tr. of Conf. of Counsel at 8–9 (Mar. 29, 2004) (Docket Item 31) (The plaintiffs' counsel stated, "So in a way because it's my burden to show the significant effect, and if I'm prepared to do it with UPS alone, it seems to me that's my risk . . ."); Pls.' Opp'n at 9–10 (stating that "the Carriers can prevail by showing the Challenged Provisions' effect on a single carrier" and that "UPS is the association member whose experience with the Challenged Provisions will pro-

vide the basis for the Carriers' as-applied challenge"). Obviously, therefore, both sides will require detailed information about UPS and the Maine law's effect upon it. Does this mean that the claim asserted by the carrier associations requires the participation of this individual association member within the meaning of *Hunt?* In the absence of UPS as a party, the Maine Attorney General raises a number of practical concerns regarding access to information not in the possession of the associations, but instead in the sole control of nonparty UPS:[3]

> The members seek relief from the Court but refuse to subject themselves to the normal discovery to which they would be subject under the Rules if they sought the relief directly. The discovery devices available between parties are there for a reason: to allow for efficient, inexpensive and fair resolution of disputes utilizing, *inter alia*, interrogatories, requests for admissions and part depositions. And, particularly from the defendant's standpoint in a case brought in Maine where the plaintiffs appear to be relying upon one large carrier [UPS], having discovery *in Maine* is logistically and economically important. Simply put, third-party discovery in this case is neither fair, nor efficient, nor inexpensive. We do not believe that the courts envisioned associational standing to be

---

**3.** The Maine Attorney General complains that obtaining discovery on other association members will also be hindered.

> Defendant cannot reasonably defend this case without the participation of those common carriers who plaintiffs allege have historically delivered tobacco to consumers, or have a desire to do so. It is no solace that plaintiffs suggest they must carry their burden (which is in actuality the burden of their members), and will present whatever facts they and their members believe is appropriate. Discovery is not so limited as to allow one party to completely control dis-

covery and the exploration of facts. Plaintiffs' strategy of using associational standing to challenge a statute on behalf of its members but protect its members from discovery should not be countenanced.

Def.'s Mot. for Partial Summ. J. and for Partial Mot. to Dismiss at 8 (Docket Item 32). However, even if UPS were a party plaintiff, the Maine Attorney General would still have to obtain discovery from the other association members through nonparty procedures. I therefore address only the absence of UPS from the lawsuit.

used, as it is here, as a sword to obtain relief for an association's members but, at the same time, to shield those members from the normal and requisite discovery that any plaintiff subjects itself to when coming to federal court seeking relief.

Def.'s Reply at 5 (Docket Item 42).

■ In determining whether individual participation is necessary, however, the focus is on the nature of the relief requested (injunctive relief versus damages), not on discovery. In fact, *Hunt*'s third prong derives from the Supreme Court's decision in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), where the Court stated:

> [S]o long as the nature of the claim and of the relief sought does not make the individual participation of *each* injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Id.* at 511, 95 S.Ct. 2197 (emphasis added). "Accordingly, it appears that an association may assert a claim that requires participation by *some* members." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir.1991) (emphasis in original). *Accord Penn. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 285 (3d Cir.2002); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 601–02 (7th Cir.1993). Associa-

tional standing is generally granted in cases seeking injunctive relief rather than damages, because individualized proof is not necessary and the relief usually inures to the benefit of all members injured. *See Warth*, 422 U.S. at 515, 95 S.Ct. 2197.

Under First Circuit precedent, in a case seeking only injunctive relief, like this case, where there is no need to allocate damages to each individual member, the basis for the requirement of individualized proof is missing. *See Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir.1990); *R.I. Brotherhood of Correctional Officers v. R.I.*, 357 F.3d 42, 48 (1st Cir.2004) (citations omitted); *Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986). *See also Retired Chicago Police Ass'n*, 7 F.3d at 602–03 (citations omitted); *Pharmaceutical Care Mgmt. Ass'n v. Rowe*, 307 F.Supp.2d 164, 173 (D.Me.2004).[4]

In fact, the First Circuit recognizes that although the opposing party may need information from individual association members, such discovery may be obtained via various techniques (*e.g.,* subpoena *duces tecum* ), without making the members parties to the action. *See Playboy*, 906 F.2d at 35–36. "[J]ust because a claim may require proof specific to individual members of an association does not mean the members are required to participate *as parties* in the lawsuit." *Id.* at 35 (empha-

---

**4.** At oral argument, the Maine Attorney General argued that proving the factual (as-applied) inquiry for preemption is akin to proving damages. It is a creative argument, but ultimately unpersuasive in light of the relief requested. The plaintiffs' claim here depends "not on evidence that differs from member to member" like damages, but instead upon the adverse effects upon one association. *See Camel Hair*, 799 F.2d at 12. A claim for injunctive relief could only be akin to a damages claim if the plaintiffs were required to

prove and allocate "substantial forbidden effects" among more than one association member. Here, there is no need to allocate, distribute or quantify these effects among various association members. Instead, "the relief sought ... will affect all the members in the same way" (*i.e.,* they all would not be required to conform with the statute), and "[t]here is no conflict here between the needs and interests of the members" (*i.e.,* no one member is seeking more relief than another). *Id.*

sis in original). Although third-party discovery for a nonparty like UPS may be more cumbersome and somewhat more costly, discovery for parties and nonparties overall is fairly comparable.[5] I conclude that the discovery burdens are not sufficient to overcome associational standing and to require UPS to prosecute the lawsuit.[6]

I therefore conclude that the carrier associations have standing to pursue an as-applied preemption challenge. However, if it turns out that by virtue of the carrier associations' conduct that the Maine Attorney General's discovery is excessively inefficient or hampered, I will reconsider this ruling under *Hunt*'s third prong.[7]

The defendant's motion for partial summary judgment is GRANTED. The defendant's partial motion to dismiss is DENIED.

So ORDERED.

5. Instead of merely noticing a deposition of UPS as a party, the Maine Attorney General must subpoena UPS under Fed.R.Civ.P. 45. Instead of filing a Fed R. Civ. P. 34 Request for Production of Documents, the Maine Attorney General must issue a subpoena *duces tecum* under the same Rule. *See* Fed.R.Civ.P. 34(c). However, the scope of discovery will remain constant. *See* Fed.R.Civ.P. 45, Advisory Committee Notes, 1991 Amendment, Subdivision (a) ("[T]he person subject to the subpoena is required to produce materials in that person's control whether or not the materials are located within the district ... within which the subpoena can be served. The nonparty witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"); Fed.R.Civ.P. 45, Advisory Committee Notes, 1946 Amendment. Subdivision (d) (stating that Fed.R.Civ.P. 45(d)(1) "properly gives the subpoena for documents or tangible things the same scope as provided in Rule 26(b)"). *See also* William W. Schwarzer, Lynn H. Pasahow & James B. Lewis, *Civil Discovery and Mandatory Disclosure: A Guide to Efficient Practice* § 6[B][6], at 6–21–22 (2d ed.1994); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2209, at 393 & n. 6 (1994); Fed.R.Civ.P. 45, Advisory Committee Notes, 1970 Amendment (stating that both Fed.R.Civ.P. 45 and Fed.R.Civ.P. 34 also allow for inspection and copying of documents).

Although Fed.R.Civ.P. 33 interrogatories may not be served upon nonparties, depositions upon written questions can be taken of nonparties under Fed.R.Civ.P. 31. They may provide the functional equivalent of interrogatories. *See* Jay E. Grenig and Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure* § 6.2 (2d ed.).

Finally, nonparties are not required to make initial disclosures under Fed.R.Civ.P. 26, nor are they required to respond to requests for admission under Fed.R.Civ.P. 36. But these devices are most useful as applied to the parties to the lawsuit in any event, here the associations.

6. I am aware that Magistrate Judge Kravchuk has been working with the parties to ensure fair and efficient access to discovery information on subjects such as where the depositions of various UPS personnel will take place, the proper place for Fed.R.Civ.P. 30(b)(6) depositions, etc.

7. I was initially concerned that UPS's refusal to join as a party plaintiff (it did so), represented by the identical law firm, in an FAAAA challenge to a Puerto Rico tax statute, *see United Parcel Serv. v. Flores–Galarza*, 210 F.Supp.2d 33 (D.P.R.2002), was only a tactical maneuver to increase the expense of the Maine Attorney General in litigating this case. At oral argument, however, the plaintiffs' lawyer advanced reasons why the associations are the party plaintiffs, one of those being that it can be disadvantageous for a particular company to challenge a tobacco-regulating law. *See* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.9, at 615 & n. 135 (1984) (citing Joseph L. Sax, *Standing to Sue: A Critical Review of the Mineral King Decision*, 13 Nat. Res. J. 76, 78–79 (1973)) (stating individuals may be reluctant to be named plaintiffs and noting that association mem-

bers may fear being individually identified with locally unpopular causes).