

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00138-CV

CITY OF ARLINGTON, TEXAS                                    APPELLANT

V.

TEXAS OIL & GAS ASSOCIATION                                    APPELLEES
AND TEXAS INDEPENDENT
PRODUCERS & ROYALTY
OWNERS ASSOCIATION

-----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-259190-12

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

The sole issue we address in this appeal is whether Appellees Texas Oil &

Gas Association and Texas Independent Producers & Royalty Owners

---

[1]See Tex. R. App. P. 47.4.

Association possess associational standing to assert on behalf of their members causes of action against Appellant City of Arlington. For the reasons set forth below, we hold that they do, and we will affirm the trial court's denial of the City's motion for summary judgment asserting a lack of standing.

## II. Factual Background

Appellees are two trade associations. Appellees' members include natural gas well operators. After the City, in 2012, established a new permit fee—requiring natural gas operators in the City to pay an additional $2,400 per well per year—and implemented numerous amendments to its fire code that affected oil and gas production in the City, the trade associations filed suit against the City seeking a declaratory judgment that the permit fee and the regulations violated the constitutional and statutory rights of the members of the trade associations. Specifically, Appellees sought a declaratory judgment that the fee violates the equal protection clauses of the Texas and United States constitutions, that the fee constitutes an unconstitutional exaction, that the fee is a deprivation of the natural gas well operators' vested property rights in violation of Texas Local Government Code section 245.002, and that the fee constitutes an unconstitutional occupation tax under the Texas constitution.[2]

---

[2]Appellees' Third Amended Petition for Declaratory Relief also seeks a declaratory judgment that the retrospective enforcement of the amended fire code is a deprivation of natural gas well operators' vested property rights in violation of Texas Local Government Code section 245.002. Because the City moved for summary judgment on Appellees' second amended petition, the City does not address this claim in its brief.

2

The City filed a traditional motion for summary judgment titled, "Motion for Summary Judgment on Plaintiffs' Lack of Standing." The motion alleged that facts pleaded in Appellees' petition seeking declaratory judgment had placed the circumstances of Appellees' individual members at issue and that, therefore, Appellees did not satisfy the third prong of the associational standing test and consequently lacked standing. At the time the City filed its motion for summary judgment, Appellees' live pleading was Appellees' Second Amended Petition for Declaratory Judgment. In support of its traditional summary judgment motion, the City relied upon only Appellees' Second Amended Petition for Declaratory Judgment, the City's first request for production to both Appellees, and Appellees' responses to the City's first request for production. After a hearing, the trial court denied the City's motion for summary judgment asserting Appellees' lack of standing. The City perfected this appeal, raising a single issue: "Did the trial court err in denying the City of Arlington's Motion for Summary Judgment on Plaintiffs' Lack of Standing?"

### III. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Standing is a component of subject-matter jurisdiction, and a plaintiff must have standing to maintain a suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). It has long been the rule that

3

a plaintiff's good-faith allegations are used to determine the trial court's jurisdiction. *Frost Nat'l Bank*, 315 S.W.3d at 503. A court may presume the truth of allegations supportive of standing to determine standing and dispose of litigation through summary judgment. *See id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446); *Brown v. Todd*, 53 S.W.3d 297, 305 n.3 (Tex. 2001) ("Because standing is a component of subject matter jurisdiction, we consider [it] as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff."). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo. *Frost Nat'l Bank*, 315 S.W.3d at 502. Thus, we review de novo the issue of whether Appellees' pleadings establish their standing to invoke the remedial powers of the trial court on behalf of Appellees' members under the doctrine of associational standing.

## IV. THE ASSOCIATIONAL STANDING TEST[3]

Article III of the United States Constitution limits the judicial power of the United States to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. One element of the case-and-controversy requirement under Article III

---

[3]While we are obligated to follow the dictates of only the United States Supreme Court and the Texas Supreme Court, we nonetheless draw on and discuss the associational standing precedent of other courts that also apply the *Hunt* associational standing test adopted by the United States Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

4

is that the plaintiff, including an association, must have standing to invoke a court's remedial powers on behalf of its members. *Big Rock Investors Ass'n v. Big Rock Petroleum, Inc.*, 409 S.W.3d 845, 848 (Tex. App.—Fort Worth 2013, pet. denied) (citing *Comm. for Reasonable Reg. of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 365 F. Supp. 2d 1146, 1161 (D. Nev. 2005)). An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. *Id.* (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977); *Tex. Ass'n of Bus.*, 852 S.W.2d at 447). The third prong of the associational standing test is best seen as focusing on the matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution. *Id.* (citing *United Food & Comm'l Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557, 116 S. Ct. 1529, 1536 (1996)).

## V. APPLICATION OF THE LAW TO THE PRESENT FACTS

The City agrees that Appellees satisfied the first two prongs of this three-pronged associational standing test but claims on appeal that Appellees cannot meet the third prong for several reasons, which we discuss below.

5

## A.  The City's Challenge to Appellees' Pleading of Relevant Facts

As noted above, the City filed a traditional motion for summary judgment on the standing issue, attacking Appellees' ability to satisfy the third prong of the associational standing test and attaching as summary-judgment evidence Appellees' second amended petition and requests for production the City had served on Appellees, as well as Appellees' responses.  The City's motion for summary judgment alleged that Appellees had put the individualized circumstances of their members into issue by pleading the individual circumstances of their members.  The City's motion for summary judgment alleged that "through Plaintiffs' allegations they have placed their members' prior actions, past and current safety record, financial condition, potential training, and revenue payments to the City squarely into issue, which all require [Appellees'] members' participation."  Likewise, the City's brief on appeal also claims that "[b]y making these allegations of 'Relevant Facts' (and by incorporating these 'Relevant Facts' into every cause of action pleaded), [Appellees] have put various matters into issue.  For instance, [Appellees'] allegations have put their individual members' safety record and safety procedures into issue in this lawsuit."  A review of both Appellees' second and third amended petitions for declaratory judgment shows, however, that Appellees merely pleaded factual

6

circumstances generally applicable to all Appellees' members, not facts unique to any particular member of Appellees.[4]

The City nonetheless argues on appeal that Appellees' "own pleadings negate associational standing under prong three." Throughout its brief, the City points to the "relevant facts" section of Appellees' pleading and claims that the facts pleaded by Appellees require a fact-intensive individual inquiry of Appellees' members, defeating the third prong of the associational standing test. But the relevant facts pleaded by Appellees and challenged by the City were required to be pleaded to establish the first prong of the associational standing test—that Appellees' members would otherwise have standing to sue in their own right. *See, e.g.*, *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex. 2007) (explaining that to meet the first prong of the associational standing test, the association "must show that its members have standing to sue in their own right"). The facts pleaded by Appellees do establish, as required by the first prong of the associational standing test, that the individual members of Appellees have a personal stake in the alleged dispute and that the injury each has suffered is concrete and particularized. A pleading cannot fail the third prong simply

[4]Additionally, the record before us contains the City's special exceptions to and moved to strike as not relevant Appellees' second amended petition. The City specially excepted to some of the same factual allegations it now contends defeat Appellees' ability to satisfy the third prong of the associational standing test. For example the City's special exceptions alleged that the factual allegations "regarding the safety record of Plaintiffs fail to state a cause of action[, and] do not relate to any factual or legal bases for any cause of action actually pled" and should be stricken.

because it satisfies the first prong. We cannot agree with the City's contention that the relevant facts pleaded by Appellees conclusively negate the third prong of the associational standing test.

The City also contends that the requests for production it sent to Appellees and Appellees' responses show that numerous matters directly concerning the circumstances of the individual members of Appellees are at issue. The City's requests for production seek numerous documents related to member operators' safety preparedness, response capacity, compliance thresholds, and other similar matters. Appellees responded to these requests for production stating that "[t]o the extent that this Request seeks documentation from 'Member Operators,' this Request seeks information or documentation from third parties that are not a party to this action and whose documents are not under the care, custody, or control of [Appellees]." The City argues that because Appellees cannot produce the requested documents, this conclusively negates Appellees' satisfaction of the third prong of the associational standing test. But the need for discovery from some of Appellees' members does not automatically defeat associational standing. *See N.H. Motor Transp. Ass'n v. Rowe*, 324 F. Supp. 2d 231, 235–37 (D. Me. 2004) (holding that "concerns regarding access to information not in the possession of the associations, but instead in the sole control of nonparty UPS" did not defeat third prong of associational standing); *see also, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 511, 95 S. Ct. 2197, 2212 (1975) (stating that associational standing may be proper "so long as the nature of the

8

claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause"); *Winnebago Cnty. Citizens for Controlled Growth v. Cnty. of Winnebago*, 891 N.E.2d 448, 456 (Ill. App. Ct. 2008);[5] *Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*, 906 F.2d 25, 35–36 (1st Cir.) ("[J]ust because a claim may require proof specific to individual members of an association does not mean the members are required to participate *as parties* in the lawsuit."), *cert. denied*, 498 U.S. 959 (1990). The issue under the third prong of the associational standing test is not whether some discovery might be required from some of Appellees' individual members; the issue is whether either the nature of the claims or the relief sought requires an intensive, fact-based inquiry of each individual member so that the presence of each individual member is required as a party to the lawsuit, thereby thwarting

---

[5]The court in *Winnebago* quoted:

> We can discern no indication in *Warth*, *Hunt*, or [*International Union, United Automobile, Aerospace, & Agriculture Implement Workers of America v. Brock*, 477 U.S. 274, 106 S. Ct. 2523 (1986)] that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. Such a stringent limitation on representational standing cannot be squared with the Court's assessment in *Brock* of the efficiencies for both the litigant and the judicial system from the use of representational standing. Rather, the third prong of *Hunt* is more plausibly read as dealing with situations in which it is necessary to establish "individualized proof," for litigants not before the court in order to support the cause of action.

891 N.E.2d at 456.

9

the administrative convenience, efficiency, and judicial economy served by the doctrine of associational standing. *See N.H. Motor Transp. Ass'n*, 324 F. Supp. 2d at 236 ("In determining whether individual participation is necessary, however, the focus is on the nature of the relief requested (injunctive relief versus damages), not on discovery"); *see also Warth*, 422 U.S. at 511, 95 S. Ct. at 2211. Thus, satisfaction of the third prong of the associational standing test depends primarily on the nature of the claims asserted and the relief sought and whether those require joinder of the members of the association as parties. *See, e.g.*, *Hunt*, 432 U.S. at 343, 97 S. Ct. at 2441 (setting forth third prong as requiring that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (same).

We overrule the portion of the City's sole issue claiming that Appellees' pleadings and Appellees' answers to the City's requests for production conclusively negate the third prong of the associational standing test. We turn now to the balance of the City's issue contending that the claims asserted and the relief sought by Appellees preclude associational standing.

### B. The City's Challenge on Appeal to the Claims Asserted and to the Relief Sought by Appellees

Under the third prong of the associational standing test, determining what type of claims brought by an association and what type of relief sought by an association would or would not require the participation in the litigation of the

association's individual members and therefore would or would not advance prudential concerns of administrative convenience, efficiency, and judicial economy is somewhat tricky. *Big Rock*, 409 S.W.3d at 849. Usually, an association's claim for damages on behalf of its members is barred by want of the association's standing to sue because such suits typically require each individual member to participate as a party in the litigation to establish his own damages. *See, e.g.*, *Warth*, 422 U.S. at 516, 95 S. Ct. at 2214 ("Thus, to obtain relief in damages, each member of Home Builders who claims injury . . . m[u]st be a party to the suit."); *Telecomms. Research & Action Ctr. on Behalf of Checknoff v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095 (D.C. Cir. 1986) (holding that "the money damages claims TRAC seeks to advance are the kind that ordinarily require individual participation" and that associational standing did not exist). For example, in *Warth,* the United States Supreme Court held that an association of construction firms could not seek damages for the profits and business lost by its members because "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515–16, 95 S. Ct. at 2214.

Although generally an association lacks standing to seek money damages unique to each of its individual members, an association generally *does* possess standing to assert claims for a declaratory judgment, an injunction, or some other type of prospective equitable relief on behalf of its members. *Big Rock*, 409 S.W.3d at 850. When an association seeks a declaration, injunction, or some

11

other form of prospective equitable relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured and that, consequently, prudential concerns are advanced and the association may possess standing to invoke the court's remedial powers on behalf of its members. *Tex. Ass'n of Bus.*, 852 S.W.2d at 448 (holding that "TAB seeks only prospective relief, raises only issues of law, and need not prove the individual circumstances of its members to obtain that relief, thus meeting the third prong" of the associational standing test); *see also Hunt*, 432 U.S. at 344, 97 S. Ct. at 2442 (recognizing that neither the commission's "interstate commerce claim nor [its] request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context").

Appellees' pleadings seek a declaratory judgment that the City's permit fee and fire code regulations are facially unconstitutional in multiple respects. Appellees do not seek money damages on behalf of their members. Appellees do not seek relief that will differ among their members. Instead, Appellees seek only declaratory relief that raises primarily issues of law; the relief requested by Appellees, if granted, will apply equally to all of their members, regardless of the particular individual circumstances of each individual member.[6] Thus, Appellees possess associational standing to raise these claims and to request this relief on behalf of their members. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443

---

[6]The conclusion and prayer in Appellees' second and third amended petitions seek only various declarations.

(recognizing association's standing to assert facial challenge to constitutionality of administrative enforcement scheme); *see also Hunt*, 432 U.S. at 343–44, 97 S. Ct. at 2441–42 (recognizing state commission's associational standing to assert facial challenge to statute for unconstitutionally discriminating against interstate commerce); *Concerned Owners of Thistle Hill Estates Phase I, LLC v. Ryan Rd. Mgmt., LLC*, No. 02-12-00483-CV, 2014 WL 1389541, at *3 (Tex. App.—Fort Worth Apr. 10, 2014, no pet.) (mem. op.) (holding association possessed associational standing to assert claims and relief that were common to all of association's members).

Although we believe the above analysis is dispositive of the remainder of the City's issue on appeal, we nonetheless, in the interest of thoroughness, briefly address each of Appellees' pleaded claims.

### 1. Equal Protection Declaratory Judgment

Appellees seek a declaratory judgment that the City's permit fee violates the equal protection clauses of the United States and Texas constitutions because the permit fee required of Appellees is greater than the permit fee required of other businesses involved in the production, storage, or transportation of flammable, combustible, or hazardous materials or substances. The City contends that this request requires a fact-intensive inquiry of the individual members and their circumstances. During oral argument, however, the City conceded that the permit fee charged to each of Appellees' members was an across-the-board $2,400 per wellhead. Thus, Appellees' equal protection

13

challenge requires a comparison between the fees the City requires to be paid by other businesses in Arlington that are engaged in the production, storage, or transportation of flammable, combustible, or hazardous materials or substances and the $2,400-per-wellhead fee imposed on Appellees' members.[7]  A comparison between natural gas operators as a group and other businesses dealing with combustible or hazardous materials does not require the participation of Appellees' individual natural gas operator members as parties. *See, e.g.*, *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (setting forth elements of equal protection claim).

## 2.  Unconstitutional Exaction Declaratory Judgment

Concerning Appellees' request for a declaratory judgment that the City's permit fee constitutes an unconstitutional exaction, the City contends that the past and future revenues earned by Appellees' individual members (and ultimately shared with the City) must be shown in order for Appellees to establish disproportionality.  But Appellees assert that this information is already in the

---

[7]Indeed, Appellees' petition states under its equal protection declaratory judgment claim:

> [The City] in passing the ordinance providing for Gas Well Operational Permit Fee has created a special class of business in Arlington—natural gas well operators—and has imposed this additional assessment only on that business. . . .  [T]he City purports to classify natural gas well operators as distinct from every other business in the City that produces, uses, transports, dispenses, disposes, stores, or handles flammable, combustible, or hazardous materials or substances.

14

City's possession and is contained in the City's own records; Appellees pleaded that since January 2008, "[w]hen added to the amount of lease bonuses paid to the City, the City of Arlington has received over $120 million from natural gas companies before accounting for permit and inspection fees." The standard of review that we are required to apply mandates that in determining standing, we view the pleadings in the light most favorable to Appellees. *See Frost Nat'l Bank*, 315 S.W.3d at 503. And the City did not come forward with jurisdictional facts controverting Appellees' pleaded facts that the City possesses records of the amount of lease bonuses and monies it has received from Appellees' members. Thus, we take Appellees' pleadings as true for purposes of determining standing. *See id.*; *Tex. Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 647 (Tex. App.—Austin 2008, no pet.). The "rough proportionality" prong of the *Dolan* exaction test does not in this case require a fact-intensive, individual inquiry of each of Appellees' members necessitating that each of them be joined as a party to this litigation. *See generally Dolan v. City of Tigard*, 512 U.S. 374, 388–96, 114 S. Ct. 2309, 2318–22 (1994); *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 448–52 (Tex. App.—Dallas 2010, pet. denied); *accord Concerned Owners of Thistle Hill Estates Phase I, LLC*, 2014 WL 1389541, at *6 (recognizing required proof of total monies collected by homeowners' association and expenditures by it did not require individualized participation of all association's members as parties to lawsuit).

15

### 3.  Violation of Vested Rights Declaratory Judgment

Appellees seek a declaratory judgment that the City's amended fire code regulations unconstitutionally deprive Appellees' members of their vested rights in violation of section 245 of the Texas Local Government Code.  *See* Tex. Loc. Gov't Code Ann. § 245.002 (West 2005) (requiring approval of permit based solely on ordinance, regulations, and rules in effect at the time the original application for the permit is filed).  The City concedes that section 245.002 prohibits it from "enforcing subsequent regulatory changes to further restrict property use after a permit application is filed."  The City argues, however, that section 245.002's prohibition does not exist when the exemption set forth in section 245.004(11) applies and contends that Appellees will be required to disprove application of this exemption by production of the safety records and procedures concerning each individual well located within the City.

Section 245.004(11) provides that chapter 245 does not apply to

> (11)  regulations to prevent the imminent destruction of property or injury to persons if the regulations do not:

> (A)  affect landscaping or tree preservation, open space or park dedication, lot size, lot dimensions, lot coverage, building size, residential or commercial density, or the timing of a project; or

> (B)  change development permitted by a restrictive covenant required by a municipality.

*Id.* § 245.004(11) (West 2005).  The plain language of section 245.004(11) addresses "regulations" and their purposes; it provides that chapter 245 does not

16

apply to certain regulations if the regulations prevent the imminent destruction of property or injury to persons. *Id.* The safety records and procedures concerning each individual natural gas well located in the City have no bearing on whether chapter 245.004(11)'s exemption applies to specific regulations promulgated by the City.[8] The City's claimed application of section 245.004(11)'s exemption to Appellees' members' vested rights does not require a fact-intensive, individual inquiry of each of Appellees' members necessitating that each of them be joined as a party to this litigation.

### 4. Unconstitutional Occupational Tax Declaratory Judgment

The City argues that Appellees' claim for an unconstitutional occupational tax declaratory judgment requires the individual participation of Appellees' members only because Appellees' pleading "specifically repeated and incorporated the 'Relevant Facts' allegations in their petition." We addressed above why Appellees' factual pleadings did not conclusively negate the third prong of the associational standing test, and we need not repeat that analysis here. Appellees' pleading of relevant facts does not generate the need for a fact-

---

[8]The City, not Appellees, bears the burden of establishing that section 245.004(11)'s exemption applies to its amended fire code regulations. *Accord Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 535 (Tex. 2013) (recognizing that before trial, the trial court granted the city's motion that Kopplow's vested rights permit was not effective against subsequent floodplain ordinance per local government code section 245.004(9)); *Hartsell v. Town of Talty,* 130 S.W.3d 325, 328–29 (Tex. App.—Dallas 2004, pet. denied) (noting that the town did not contend that section 245.004's exemptions applied).

intensive, individual inquiry of each of Appellees' members necessitating that each of them be joined as a party to this litigation.

## VI. CONCLUSION

Having reviewed Appellees' pleadings, the claims asserted by Appellees, the relief sought by Appellees, and all of the arguments made and contentions asserted by the City in its brief, we overrule the City's sole issue and affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DELIVERED:  September 18, 2014

18